### UNITED STATES v. BEE et al.

#### (Circuit Court of Appeals, Ninth Circuit. January 16, 1893.)

1. CONSULS—SALARY—WHEN SERVICE BEGINS.

    Under Rev. St. § 1740, a person residing at Apia in the Friendly and Navigators' islands, who received notice from the department of state in June, 1874, to proceed to San Francisco, and there await his instructions and commission as consul at Apia, and who left Apia July 3, 1874, arrived in San Francisco August 21st, took the oath of office September 14th, executed his bond September 15th and sailed for Apia November 18th, arriving January 1, 1875, is not entitled to salary prior to January 1, 1875, except for the time he was awaiting instructions, (from September 15th to October 14th,) and for the time occupied in the voyage, (from November 14th to January 1st.)

2. SAME—OVERPAYMENT—LIABILITY OF BONDSMEN.

    Bondsmen who undertake that a consul shall truly and faithfully discharge the duties of his office, and faithfully pay over and deliver up all moneys which shall come into his hands, are liable for moneys which he gets as overpayments of salary, and fails to return to the government.

3. SAME—NEGLECT OF GOVERNMENT TO SUE.

    The neglect of the treasury department in claiming or suing for moneys paid to a consul in excess of his salary does not discharge the sureties on his bond from their liability therefor, although such neglect continues long enough to afford the sureties a good defense against any but the government, for the public interest should not be prejudiced by the neglect of public officers.

In Error to the Circuit Court of the United States for the Northern District of California.

At Law. Action by the United States against Frederick A. Bee and William Bell, bondsmen of S. A. Foster, to recover an excess of salary paid to Foster while acting as United States consul. The district court gave judgment for plaintiff, but this was reversed on writ of error by the circuit court. Plaintiff brings error. Judgment of circuit court reversed.

Charles A. Garter and Willis G. Witter, for the United States.

Thomas D. Riordan, for defendants in error.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. This case involves the construction of section 1740 of the Revised Statutes of the United States, which reads as follows:

"Sec. 1740. No ambassador, envoy extraordinary, minister plenipotentiary, minister resident, commissioner, charge d'affairs, secretary of legation, assistant secretary of legation, interpreter to any legation, or consulate, or consul general, consul, or commercial agent, mentioned in Schedules B and C, shall be entitled to compensation for his services, except from the time when he reaches his post and enters upon his official duties to the time when he ceases to hold such office, and for such time as is actually and necessarily occupied in receiving his instructions, not to exceed thirty days, and in making the direct transit between the place of residence, when appointed, and his post of duty, at the commencement and termination of the period of his official service, for which he shall in all cases be allowed and paid, except as hereinafter mentioned, and no person shall be deemed to hold any such office after his successor is appointed and actually enters upon the duties of his office at his post of duty, nor after his official residence at such post has terminated, if not so relieved. But no such allowance or payment shall be made to any consul general, consul, or commercial agent, not embraced in Schedules B and C, or to any vice consul, vice commercial agent, deputy consular, or consular agent for the time so occupied in receiving instructions or in such transit as aforesaid; nor shall any such officer as is referred to in this section be allowed compensation for the time so occupied in such transit at the termination of the period of his official service if he has resigned, or been recalled therefrom for any malfeasance."

In June, 1874, S. A. Foster, who was residing at Apia, in the Friendly and Navigators' islands, received notice from the department of state to proceed to San Francisco, and there to await his instructions and commission as consul at Apia. He left Apia on July 3, 1874, and arrived at San Francisco August 21, 1874. On September 14, 1874, he received notice of his appointment as consul, and took his oath of office, executed his bond, and on the following day forwarded the same to Washington. On November 18th he sailed for Apia, where he arrived on January 1, 1875. He immediately entered upon the discharge of his duties as consul, and continued to act as such until September 28, 1876. On July 3, 1875, he notified the department that he had drawn for one year's salary from July 1, 1874, to July 1, 1875, at $1,000 per annum. The draft was forwarded to the secretary, and was paid. In September, 1875, on an adjustment of his accounts, the department decided that he was not entitled to salary prior to January 1, 1875, except for the time he was awaiting instructions, to wit, from September 15, 1874, to October 14, 1874, and for the time occupied in transit, from November 18, 1874, to January 1, 1875, and fixed the amount due from him on account of overpayment at $298.93. After this adjustment Foster continued to make drafts for his salary, and the drafts were regularly paid, without deduction of the amount which was claimed to be due. Foster's term expired in September, 1876, and he died in 1877. The matter rested thus for 12 years, when the account was again adjusted, and Foster was allowed a credit of $85 for errors made by himself in drawing his drafts, and this action was commenced in the district court against Foster's bondsmen to recover $213. A judgment was rendered in the district court in favor of the United States for that amount, and on writ of error to the circuit court that judgment was reversed, whereupon the cause was brought on writ of error to this court.

The case is presented on an agreed statement of facts. The defenses made to the action are threefold: First, that Foster was entitled to all the money paid him; second, that the terms of the

v.54r.no.1—8

bond do not render the sureties liable for the money; third, that the negligence of the treasury department was of such a character as to release the sureties.

So far as the first defense is concerned, it is sufficient to say the statute is plain, and susceptible of but one interpretation, and under its provisions and the stipulated facts there can be no question that Foster was overpaid the full amount sued for.

Does the bond, by its terms, hold the defendants liable for this money? Their undertaking was that Foster should "truly and faithfully discharge the duties of his said office according to law, and truly and faithfully pay over and deliver up all moneys, etc., which shall come into his hands." It would be a narrow and unreasonable interpretation of this instrument to say that it held the bondsmen liable for moneys that came into Foster's hands from other sources, but that it did not hold them liable for moneys that the government might overpay him for salary. The money having been received by Foster in excess of the salary then justly due him, it was his duty to repay the excess to the government. The performance of that duty, and the accounting for this money, were just as fully secured to the United States by the terms of the bond as was the discharge of any duty pertaining to his office, or the payment of any other moneys that might come into his hands as such officer.

Neither does the negligence of the treasury department release the sureties. It is true, as urged, that the officers of the government might have refused to pay the overdraft in the first instance, and it was their duty to have deducted the overpayment from the subsequent drafts for salary. If the obligee in the bond were any other than the government, this defense might avail in behalf of the sureties. But the neglect of the United States officials does not excuse Foster's wrong, in the first instance, in drawing for more money than was due him, or his subsequent failure to refund the same. All the property of the United States is held in trust for the people, and it is now well settled upon grounds of public policy that the public interests shall not be prejudiced by the neglect of the officers or agents to whose care they are confided. U. S. v. Nashville, C. & St. L. Ry. Co., 118 U. S. 120, 6 Sup. Ct. Rep. 1006; Van Brocklin v. State of Tennessee, 117 U. S. 151, 6 Sup. Ct. Rep. 670; U. S. v. Insley, 130 U. S. 263, 9 Sup. Ct. Rep. 485.

The judgment of the circuit court is reversed, with instructions to enter judgment for plaintiff, and for costs.