The plaintiff alleged that at the request of one Joel Thorp, he lent him $700, to secure which he took a mortgage at six months upon sundry negroes; that Thorp urged the plaintiff to keep the mortgage secret, and not to have it registered within the six months for which the loan was made, as he would certainly repay it within that time, and as its publicity would injure his credit, and cause his creditors to press him immediately; that the plaintiff, believing Thorp to be solvent, as he was in possession of a large visible property, and confiding in his promise of payment, had not procured the mortgage deed to be registered; that the defendants had direct notice of its existence, being conusant of the whole transaction; notwithstanding which, they had procured a deed of trust for their benefit from Thorp, in which the negroes mortgaged to the plaintiff were included; that they had caused this deed to be registered before that to the plaintiff, and had brought an action at law against the plaintiff for the negroes mortgaged to him, which he had taken into possession soon after the expiration of the six months for which the loan was made. The prayer of the bill was for an injunction, and satisfaction of the plaintiff's mortgage from the property conveyed to secure the defendants.
(111) The defendants, in their answers, admitted express notice of the plaintiff's mortgage; they denied that Thorp was generally esteemed to be solvent at the time he gave the mortgage to the plaintiff, but alleged that he was then, and before that time had been, greatly discredited, and that many executions were hanging over him; that the defendants, fearing they might sustain a loss by him, had made up an estimate of his debts and effects, the result of which being unfavorable, the defendant Turner had waited upon him and communicated it to him, and asked for and obtained a conveyance for their security. They insisted that the plaintiff had fraudulently concealed his mortgage with the view of giving Thorp a false credit, and enabling him to delay his creditors in the collection of their debts, and that they had obtained a fair priority over the plaintiff, which they submitted they were justified in holding.
The cause was heard upon bill and answer, by NASH, J., on the Spring Circuit of 1826, who dissolved an injunction previously obtained, and dismissed the bill, from which decree the plaintiff appealed.
From the facts and admissions in this case, my opinion is that the complainant is entitled to relief. The first question arises on the act of 1715 (Rev., ch. 7), relative to mortgages. A mortgage between *Page 75 
the parties is valid, although no registration be made, as well from the words of the act as the uniform construction of it. Its professed design was to prevent frauds by double mortgages, which design is accomplished by giving priority to a subsequent mortgage, if registered before a prior one, unless the latter be registered within fifty days; so that a person about to secure a debt or to loan money may, by inspecting (112) the register's books, ascertain whether there be a prior encumbrance upon the property, and if there be none, or none registered within fifty days, he may proceed to act without fear of secret liens of which he knows nothing. The law was designed to give notice to persons so situated. But if it be clearly established in proof that a subsequent mortgagee had notice of a prior mortgage, although not registered, he shall in equity be bound by it, although he hath obtained a priority at law; for having this notice, he may protect himself from harm by forbearing to proceed. The words of the English Registry Act are stronger that those of the act of 1715, viz., "and that every such deed or conveyance that shall at any time after, etc., be made and executed shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for a valuable consideration, unless such memorial thereof be registered," etc. According to the preamble of that act, it was intended to secure subsequent purchasers against prior secret conveyances and fraudulent encumbrances, corresponding in this respect to the act of 1715. The British act received a construction soon after its passage, which has continued since, without any diversity of opinion, that where a person had no notice of a prior conveyance, there the registering of the subsequent conveyance shall make or prevail against the prior one; but if he had notice of the prior one, then it was not a secret conveyance by which he could possibly be prejudiced. By this construction the deed is made void against the subsequent purchaser or mortgagee, whereby they gain the legal estate, but they are still left open to any equity which a prior purchaser or encumbrancer may have against them. That the defendants had notice, before taking the deed of trust, is distinctly admitted; and the remaining question is whether the purpose for which the mortgage to Pike was omitted to be registered is such a fraud as to deprive him of his equitable right. It appears to me that (113) the suspicion of fraud is repelled by the ignorance both of Thorp and Pike that the former was insolvent. He was in possession of considerable property, which appears to have been thought by the parties equal to the payment of his debts; his eyes do not appear to have been opened to his true situation until Turner waited upon him, after having made an estimate of his debts and his property. Being engaged in trade, it was of importance that his creditors should not come upon him all at once, which they probably would have done when they saw he was *Page 76 
making liens on his property. Whereas the maintenance of his credit for a while might have enabled him to pay all his debts. It seems to me to be a rigorous construction to impute fraud to the omission of an act which the law did not require; but if it were so, it is void against those only whom it was intended to deceive. It was impossible that the defendants could be injured, since they were apprised of the transaction. I therefore think that this act for the prevention of fraud would have the effect of promoting it, if the consciences of the defendants could not be affected by the notice; or the object of the registry being to give notice, the necessity of it is superseded as to those who have notice without.