UNITED STATES v. DEVEREUX et al.

(Circuit Court of Appeals, Fourth Circuit. November 1, 1898.)

No. 256.

1. UNITED STATES—PUBLIC NATURE OF PROPERTY INTERESTS—RIGHTS AS SUITOR.
   The United States holds whatever interests it may have in property, though claiming as cestui que trust under a deed between private persons, for public purposes, and cannot be prejudiced by any negligence or laches of its officers or agents, nor bound by any statute of limitations.

2. SAME—DETERMINATION OF RIGHTS BY COURTS—RULES GOVERNING.

When the United States comes into its own courts as a suitor, its rights and equities are to be determined on their merits by the same rules governing those of private individuals.

3. DEED CREATING TRUST—CONSTRUCTION—INTEREST OF CESTUI QUE TRUST IN PROPERTY.

A conveyance of land in trust to pay a debt due to the United States by sales to be made in the discretion of the trustee, the remainder to be held to the use of another, does not vest the United States with any interest in the land; and, in a suit against a third person claiming the land adversely, it can only stand upon the rights of the trustee.

4. ADVERSE POSSESSION—PRESUMPTION OF TITLE.

Where a trustee to whom land was conveyed never took possession of the land, nor attempted to execute the trust in any manner until after the lapse of more than 60 years, during all of which time the land was held by others claiming title adversely, it will be presumed as a matter of fact that the possession of such adverse claimants rested upon a grant.

5. DEED—DELAY IN RECORDING—INTERVENING TITLE.

Under the registration act of North Carolina of 1815, which required conveyances to be recorded within one year after their date, a deed, whether considered as an absolute conveyance or as a mortgage, which was not recorded until some 12 years after its execution, was void as against a sale of the land after its date, and before its registration on a judgment against the grantor.

Appeal from the Circuit Court of the United States for the Eastern District of North Carolina.

This case comes up on appeal from the decree of the circuit court of the United States for the Eastern district of North Carolina. The bill is filed by the United States against the defendants, seeking satisfaction of certain claims of the United States, by the sale of lands in the state of North Carolina, to which the defendants assert title. The facts as they appear in the record are as follows: At the May term, 1816, of the circuit court of the United States for the district of North Carolina, held at Raleigh, the United States recovered two judgments against Benjamin Smith,—one in the sum of $3,250, with interest from 28th November, 1803, and costs; and the other in the sum of $3,251.27, with interest from 28th November, 1803, and costs. The judgments were duly entered, and executions issued thereon. The United States aver that they remain unpaid. The marshal for that district, in order to satisfy the judgments, levied upon certain slaves of the defendant Smith. Smith was unwilling that the slaves be sold under these executions, and, to this end, negotiations were opened and concluded between the marshal and John F. Burgwin, acting as the agent and friend of Smith and his wife, the result of which was that Burgwin entered into bond in the penal sum of $20,000, the condition of which recited that, at the instance of Burgwin, the marshal had given up the possession of the negroes, and substituted in lieu thereof a right to levy upon and sell in satisfaction of the judgment certain lands, the legal title to which stood in the name of Burgwin, the sale of which should be consented to by Burgwin. Among these lands was the land concerning which this bill is filed. It is described as follows: "A certain piece or parcel of land, lying and being in the county of Brunswick and state of North Carolina, commonly known by the name of the 'Cape Island' or 'Bald Head'; beginning at the point of high land next to Cape Point; running thence, along the sea shore, north, 20 degrees east, 624; thence N. 75; thence So., 85 W., 35; then So., 55 W., 60; then N., 70 W., 48; then So., 80 W., 10, to a little marsh; then to a great marsh at the mouth of Cape Fear; now then So., 65 W., 100; then, along said marsh, So., 55 E., 290; then So., 40 W., 80; then So., 75 35, to the sea shore; then So., 55 E., 364, to the beginning, which tract of land was granted to Thomas Smith by grant bearing date the 8th day of May, 1713." This tract of land was of the inheritance of Mrs. Sarah Dry Smith, wife of Benjamin Smith, and on the —— day of ——, 1816, was conveyed by deed of Smith and his said wife to

John F. Burgwin, in terms conveying a fee simple absolute. It is alleged, however, and admitted, that, although absolute in its terms, the deed was really intended between the parties as a defeasible deed by way of mortgage. This deed was not recorded until 29th July, 1829. On 25th September, 1820, Burgwin executed to Joseph G. Swift a conveyance in trust of certain lands in New Hanover and Brunswick county, in North Carolina, among them a tract of land conveyed to him by George Hooper, and this tract, Smith's Island, the Cape Island, or Bald Head. This deed recites the recovery of the judgment in 1816 against Benjamin Smith; the levy under execution upon his negroes; his desire to avoid a sale of the negroes; the interposition of Burgwin; the execution of the bond by him in the penal sum of $20,000; the substitution of the lands for the slaves, especially of the tract conveyed by George Hooper; that the sale of the lands had not yet taken place; that both Burgwin and Smith desired that the former be relieved from his responsibility, and that the comptroller of the treasury of the United States had consented to release Burgwin from his penal obligation, provided that he would vest the property in Joseph G. Swift, as a trustee, for securing said debt to the United States, and for other purposes; that one deed had been executed to this end in 1818, which was not satisfactory to the comptroller, and then this deed was made. It conveys in fee to Swift a number of tracts of land in the above-named counties of North Carolina, among them the Hooper tract, and this Smith Island, Cape Island, or Bald Head tract. The conveyance is to the following uses, intents, and trusts hereinafter mentioned. "First, to pay the before mentioned debt to the United States by a sale or sales to be made in such manner as he, the said Joseph G. Swift, may think best for enhancing the value of the lands, and then in trust to and for the separate use of said Sarah Dry Smith, during her coverture, free from the control or debts of her husband, Benjamin Smith, and, after the coverture, then in trust for the survivor of them, the said Benjamin and Sarah Dry Smith, for life, and afterwards in trust for the said Benjamin, his heirs and assigns, forever, with power, nevertheless, in said Sarah Dry Smith during her coverture (after the said debt to the United States is satisfied, and all necessary costs and charges are paid in accomplishing a sale for said purposes), by any instrument of writing in nature of a deed or of a last will and testament, executed in the presence of one or more creditable witnesses, to limit and appoint the said lands, or any part thereof, to any person or persons, upon any uses, trust, or estate which she may deem proper, which said limitations and appointments shall then take place and supersede the further trusts and uses declared." This deed was not recorded until 29th July, 1829. On 19th June, 1833, an indenture tripartite was executed between Joseph G. Swift, John F. Burgwin, and Thomas P. Devereux, which recited the execution of the deed of 25th September, 1821, between Swift and Burgwin, in detail, and that it was thought to be more for the interest of the United States that the lands and premises therein described be conveyed to Devereux, so as to substitute him in the place of Smith; and thereupon both Smith and Burgwin, for the purposes of this substitution, conveyed all these lands, including the Hooper lands and the Bald Head tract, to Devereux, in fee for such estate and under such terms, conditions, and limitations as the same remained in the said Joseph G. Swift or John F. Burgwin, or either of them, at and immediately before the signing and ensealing of these presents, but for no other or greater estate than the said Joseph G. Swift or John F. Burgwin, or either of them, then had and held the same. This deed was duly recorded.

Thomas P. Devereux died in March or April, 1869, leaving a large number of heirs at law and distributees, "scattered from the state of Texas to the state of New York"; and in 1891 proceedings were instituted in the circuit court of the United States for the Eastern district of North Carolina by the United States against the descendants of Thomas P. Devereux, praying that they be relieved of the trust, and a new trustee appointed. These proceedings resulted in the appointment of another, Thomas P. Devereux, as trustee. He is a party to the case at bar as defendant; has been served, but has not appeared or answered, and is under decree pro confesso. Neither Burgwin nor Smith nor the United States have ever been in possession of these lands, or any part of them. Smith and his wife remained in possession, except that

the United States has had a lease of a small tract of the land on Bald Head for the past 15 years, for a lighthouse or some such public purpose. Sarah Dry Smith, the wife of Benjamin Smith, died in 1821, having by her last will and testament devised all her estate, real and personal, to her husband, Benjamin Smith, she having made no further disposition of the Bald Head or Smith's Island property in her lifetime. Benjamin Smith died in the year 1826, in possession of said property; and, by his last will and testament, he devised all his estate to Mary Grimke. At the March term, 1829, of the court of pleas and quarter sessions of the county of Brunswick, N. C., Robert Horne, a creditor of Benjamin Smith, obtained a judgment against his executors, tested first Monday in June, 1829, and issued execution thereon, which was levied upon the lands of Smith's estate in the hands of his devisee, Mary Grimke. The property was sold by the sheriff, and at the sale this Bald Head or Smith's Island land was purchased by John Walker and John H. Holmes, and a deed made to them. Holmes died shortly thereafter, and his estate in these lands descended to his sole heir at law, John W. Holmes. At the death of John W. Holmes, his heirs conveyed all their estate to John Walker. Soon after the execution of the sheriff's deed to Walker and Holmes, they went into actual possession of the lands conveyed, and Walker remained in possession, first with John H. Holmes, then with John W. Holmes, and then with the heirs of John W. Holmes, and afterwards in sole seisin until his death in 1862. Since that time, all of the defendants but Thomas P. Devereux (heirs at law of John Walker) have been in possession of the land. The lease to the United States above spoken of was made in 1881 (31st January). It covers a small part of this Bald Head tract, and is for the term of 15 years. The United States entered under this lease, and remained and still remains in possession under it.

At December term, 1825, of the court of pleas and quarter sessions for the county of New Hanover, N. C., the administrators of James Richard obtained a judgment against Benjamin Smith, on a debt contracted before the deed of Smith to Burgwin was executed. The sheriff, under execution issued upon this judgment, levied upon and sold the Hooper lands to William W. Jones. The Hooper lands, as has been seen, are included in the Burgwin-Smith deed. At the May term of the circuit court of the United States for the district of North Carolina, the case of Doe, on the demise of Joseph G. Swift, against William Watt Jones, was tried, the question in which was the validity of this Burgwin-Smith deed. The cause was tried before Chief Justice Marshall and Judge Potter, the district judge, on an agreed statement of facts. The court held "that the deed from Burgwin to Smith was void and inoperative to pass title to the lands mentioned therein, for want of due and legal registration thereof." The bill sets up the rights of the United States as cestui que trust under the Burgwin-Swift deed, and seeks a sale of the lands, Smith Island or Cape Island or Bald Head, and the application of the proceeds of sale to the Smith debt. The bill prays that the deed to John Walker be declared null and void, and that the defendants be required to execute a quit-claim in the lands to Devereux, trustee, or the purchaser of the premises under an order of sale by the circuit court; that the lands be sold for the purpose of satisfying the debt due to the complainant; and that the purchaser at such sale be let into exclusive possession; and for general relief. The answer set up an objection for want of proper parties. The agreed statement of facts, a part of the record, contains this clause: "It is agreed as a fact that all necessary parties to this action have been brought before the court." On this point no opinion is expressed. The answer then admits the execution of the Burgwin-Swift deed, and avers that the same was inoperative because not properly recorded. It also admits the execution of the deed by Smith and wife to Burgwin, and avers that it, although absolute on its face, was in fact a mortgage, and void for want of registration. It sets up the title under execution to John Walker, and the long, continuous, adverse, and actual possession of the lands by them and their ancestor, as in bar of any claim by the complainant. It sets up the plea of the statute to the right of action of the trustee under the Swift deed, and relies on the presumption from lapse of time to perfect their title.

E. K. Bryan, U. S. Atty.

George Rountree and E. S. Martin (P. D. Walker and Junius Davis, on the brief), for appellees.

Before GOFF and SIMONTON, Circuit Judges, and BRAWLEY, District Judge.

SIMONTON, Circuit Judge (after stating the facts).   It was suggested in argument that as the United States in this case comes into court claiming rights as cestui que trust under a deed between private parties, and asserting these rights as a private individual would, the case does not involve any governmental right or duty; that, therefore, the ordinary rules controlling courts of equity as to laches should be enforced.   This position cannot be maintained. The United States do not and cannot hold property as a monarch may for private or personal purposes.   Van Brocklin v. Tennessee, 117 U. S., at page 158, 6 Sup. Ct. 670.   In the present case the United States holds what title it has to the property in question as it holds all other property for public and private purposes (U. S. v. Insley, 130 U. S. 265, 9 Sup. Ct. 485);  and cannot be prejudiced by the negligence of the officers and agents to whose care their interests were confined; nor are they bound by any statute of limitations (U. S. v. Railway Co., 118 U. S. 120, 6 Sup. Ct. 1006).

With this exception, however, and in perfect consistency with it, when a sovereign comes into one of its own courts of its own accord, and seeks relief, all the rules established for the administration of justice between individuals are applied, and bind all parties.   Port Royal & A. Ry. Co. v. South Carolina, 60 Fed. 552; Prioleau v. U. S., L. R. 2 Eq. 659.

And in U. S. v. Flint, Fed. Cas. No. 15,121 (Field, circuit judge), we find:

"If, on consideration of the circumstances of a given case, it be inequitable to grant the relief prayed against a citizen, such relief will be refused by a court of equity, although the United States be the suitor."

The question naturally arises:   What interest did the United States take in this land now claimed by defendants, assuming for the present that the deed was recorded in proper time?

In Neilson v. Lagow, 12 How., at page 106, the supreme court, discussing a deed in terms just like this, says:

"The deed in question conveyed the land to Badollett and others, in trust to sell so much thereof as might be necessary to raise sufficient money to pay a debt due from the bank to the United States.   It is clear this was not in any sense a purchase of land on account of the United States.   In the land itself, the United States acquired by the deed no interest.   They were not even clothed with a right to acquire such an interest through the aid of a court of equity, for their title was not to the whole proceeds of the lands, whatever they might be, but only to so much of them as might be necessary to pay the debt of the bank.   To this extent both the creditor and the debtor had the right to insist on a sale; and whatever residue of land should remain was by force of the deed, operating by means of a shifting or secondary use, to go to the bank upon payment in full of the debt due to the United States. It is true, the deed contains some language, which, taken by itself, might raise a use, executed in the United States; but it is well settled that such

language is controlled by an intent manifested in the instrument to have the legal estate remain in trustees, to enable them to execute a trust which the deed declares; and where, as in this case, the trust is to sell and convey in fee simple absolute, a legal estate is vested in the trustees commensurate with the interest which they must convey in execution of the trust. Mott v. Buxton, 7 Ves. 201; Leonard v. Sussex, 2 Vern. 526; and the cases in note (f) to Chapman v. Blissett, Cas. T. Talb. 145–150; Trent v. Hanning, 7 East, 99; Doe v. Willan, 2 Barn. & Ald. 84."

We must deal with this case, therefore, as between the trustee and the defendants. Is there any estate left in the trustee, or any title which can be enforced in any court of law or equity? The defendants, through their ancestor, went into possession of the land in controversy in 1829, under sheriff's deed, in actual possession, under color of title. Tate v. Southard, 10 N. C. 119; Kron v. Hinson, 53 N. C. 347; Hilliard v. Phillips, 81 N. C. 99. The present proceedings, seeking to enforce the performance of his duty by the trustee, commenced 21st August, 1893, against them, after a period of actual, continuous, open, adverse possession for over 60 years. During all that time there has been no entry or possession by the trustee or any one claiming under him. Were he now to attempt to execute his trust, and to enter and offer for sale these lands, or to bring his action of ejectment therefor, or were his cestui que trust to adopt the course suggested in 2 Lewin, Trusts, 868, as the only course to be adopted, and bring the action in the name of the trustee, such an action must, of necessity, fail. After this great lapse of time, courts will presume anything and everything to have been done which, if done, would be a bar to the claim. Id. 869; Roe v. Ireland, 11 East, 280. This rule of presumption is one of policy as well as of convenience, and necessary for the peace and security of society. "If time," said Lord Plunkett, "destroys the evidence of title, the law has wisely and humanely made length of possession a substitute for that which has been destroyed. He comes with a scythe in one hand to mow down the muniments of our rights, but in his other hand the lawgiver has placed an hourglass, by which he metes out incessantly those portions of duration which render needless the evidence he has swept away. Whart Ev. § 1338, note 5."

It is not necessary to presume that a deed was, in point of fact, executed. It is sufficient if the evidence leads to the conclusion that a conveyance might have been executed, and that its existence would be a solution of the difficulty arising from its mere execution. Fletcher v. Fuller, 120 U. S. 546, 547, 7 Sup. Ct. 667; McLeod v. Rogers, 2 Rich. Law, 22. Presumption does not operate like the statute of limitations, and bar a right which is known to exist; or like laches, which deprives one of a right which did exist. It operates as evidence, and establishes the conclusion that the right which did exist has been duly relinquished by the possessor of it.

Wharton, in his Law of Evidence (section 1348, note 1), puts it in this way:

"Thus, the lapse of time does not of itself furnish a conclusive legal bar to the title of the sovereign, agreeably to the maxim, 'Nullum tempus,' etc., yet, if the adverse claim could have had a legal commencement, juries are instructed or advised to presume such commencement after many years of uninterrupted adverse possession or enjoyment."

Laches and the statute of limitations affect the remedy. Presumption clothes with a right. The statute of limitations ripens a trespass into a legal title because of neglect of the true owner. Presumption concludes that a lawful origin existed.

The supreme court of the United States, in U. S. v. Chaves, 159 U. S., at page 464, 16 Sup. Ct. 62, says:

"It is the general rule of American law that a grant will be presumed upon proof of an adverse exclusive and uninterrupted possession for 20 years, and that such rule will be applied as a presumptio juris et de jure whenever, by any possibility, a right may be acquired in any manner known to the law. * * * Thus, although lapse of time does not of itself furnish a conclusive bar to the title of the sovereign agreeably to the maxim, 'Nullum tempus occurrit regi,' yet, if the adverse claim could have a legal commencement, juries are instructed to presume such commencement after many years of uninterrupted possession or enjoyment."

Apply these to the present case. The trustees had full power of sale. The purpose of the sale, however, was, among other things, to satisfy a debt due to the United States. The long, continuous, uninterrupted, and open possession and claim of the Walkers may well justify the presumption of a conveyance by the trustee, of a release of the mortgage, or of satisfaction of the judgment by the United States, upon payment, or in any other mode, or of a release of its claim. This presumption is encouraged by the result of the suit by the trustee against William W. Jones in the United States circuit court at Raleigh. It is made almost certain by the fact that the United States accepted and holds a lease as tenant of these defendants of a part of the land included within the boundaries of the territory they now claim.

2. Did either Burgwin or Swift have a title to these lands which can prevail against the title of the defendants? There can be no doubt that the deed of Smith and wife to Burgwin, although absolute in terms, was intended for, and must be deemed to be, a mortgage. This was the substantial object of the conveyance, and equity will look to that. Peugh v. Davis, 96 U. S. 332. And this is so under the general principles of equity jurisprudence determinable by the federal courts. Russell v. Southard, 12 How. 139. The Burgwin-Swift deeds are deeds of trust in the nature of a mortgage. If this deed be treated as an absolute deed, it was not recorded until 1829, years after its execution, although the act of 1715 required its record within 12 months from its date. If it be a mortgage, it would seem to come within the condemnation of Gulley v. Macy, 84 N. C. 434. "Such a grantee can acquire no title as against creditors," prior or subsequent (Halcombe v. Ray, 23 N. C. 340), "or subsequent purchasers; not because of any evil intent to perpetrate a fraud, but because he cannot bring himself within the provisions of a statute which allows a mortgage or deed of trust to take effect from registration only. As an absolute deed, it cannot be registered, because that was not the intent of the parties, nor as a mortgage, because it does not purport to be one, and so would fail to give the notice the statute desires." Moreover, both this deed and that of Burgwin to Swift were recorded in 1829, after the sheriff's deed to Walker. "A mortgage deed not registered in time, when registered, has no relation back to

its date, but operates only from the time of registration. It shall not, therefore, avail anything against an execution levied after its date, and before its registration." Tate v. Brittain, 10 N. C. 55. In Cowan v. Green, 9 N. C. 384, it is said: "A mortgage not registered in time is inefficient against purchasers subsequent to the mortgage whose conveyances are registered before the mortgage." In Davidson v. Beard, 9 N. C. 520, a creditor subsequent to an unrecorded mortgage obtained a judgment and levied an execution, not having notice of the mortgage when the debt was incurred, but he did have notice before levy. The execution was held to have priority over the levy. In the same case it was held that under the act of 1715 a subsequent purchaser has the same priority over an unrecorded mortgage as a subsequent mortgagee, and so is any other subsequent incumbrancer.

It is said, however, that if the deed of the Smiths to Burgwin, and of Burgwin to Swift, be inoperative as to the defendants, because of nonregistration, this omission was cured by the deed of Burgwin and of Swift to Devereux, trustee, in 1833, which was duly recorded. The conveyance to Devereux was for such estate and under such terms and conditions and limitations as remained in the said Joseph G. Swift or John F. Burgwin, or either of them, "at and immediately before the signing and ensealing of these presents," but for no other or greater estate than the said Joseph G. Swift or John F. Burgwin, or either of them, then had and held in the same. What estate had Burgwin in himself when this Devereux deed was executed? None, for as between him and Swift he had parted with all his interest in the property and power over it, for good and valuable consideration. Nothing was left in him. His deed binds him, and as to him operated, with or without registration. Pike v. Armstead, 16 N. C. 110; Walker v. Coltraine, 41 N. C. 79; Hodges v. Spicer, 79 N. C. 223.

With regard to Swift's conveyance to Devereux. The latter rests entirely upon Swift. He gets all that Swift had, but no more. The deed was intended to operate, and could only operate, as the substitution of one trustee for another. In establishing the present claim against the defendants, use must be made of Swift's title; and, as to these defendants, it would seem that that is void. The decree of the circuit court dismissing the bill is affirmed.