## UNITED STATES *v.* INSLEY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF KANSAS.

No. 221. Argued March 21, 1889.— Decided April 8, 1889.

In a suit in equity, brought by the United States to redeem a parcel of
land in Kansas, from a mortgage, the defence of laches cannot be set
up, although the bill was filed more than twelve years after the defendant
obtained title to the land by purchasing it on a foreclosure sale under the
mortgage, and more than thirteen years after the United States purchased
the land on a sale on execution on a judgment obtained by it, after the
mortgage was given, against the mortgagor, who still owned the land,
the United States not having been a party to the foreclosure suit.

The United States holds the title to the land for public purposes and not
for private purposes, and holds in like manner the incidental right of
redemption.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Maury* for appellant.

No appearance for appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a bill in equity, filed in the Circuit Court of the
United States for the District of Kansas, by the United States
against the heirs-at-law of Polly Palmer and the heirs-at-law
and administratrix of Moses McElroy, seeking to redeem a
parcel of land known as lot 1 in block 104, in the city of Fort
Scott, in the State of Kansas, from a claim made thereto by
the Palmer heirs under a mortgage. The bill was originally
filed November 28, 1884. After a demurrer had been put in
to it by two of the defendants, an amended bill was filed, on
July 22, 1885. Some of the defendants interposed a general
demurrer to the amended bill, and on a hearing the demurrer
was, on December 14, 1885, sustained, and the bill was dis-
missed. From that decree the United States has appealed.

The material facts set forth in the amended bill are these: On the 16th of October, 1869, the United States recovered a judgment at law, in the District Court of the United States for the District of Kansas, for $2000, against Moses McElroy and Charles Bull. Two executions were issued thereon, and were returned unsatisfied. On the 7th of August, 1869, McElroy and his wife executed a mortgage for $3500 to Polly Palmer, on lots 1 and 3 in said block No. 104. On the 30th of May, 1871, Polly Palmer commenced a suit in a state court of Kansas against McElroy and his wife to foreclose the mortgage, and, on October 4, 1871, obtained a judgment of foreclosure for $3764.16, which ordered that the property be sold to satisfy the mortgage. It was sold, and purchased by Polly Palmer. The sale was confirmed by the court, and, on January 4, 1872, a sheriff's deed for the property was made to her, which was duly recorded. At the time the foreclosure suit was commenced, the United States marshal had made a levy on said property, under an execution issued on the judgment of the United States, and the said lots 1 and 3 had been advertised to be sold on June 6, 1871. On that day, lot 1 was sold to the United States; and on October 16, 1871, the District Court of the United States confirmed the sale, and ordered a deed to be made to the United States. In the foreclosure suit, the United States was not made a party, and did not appear. At the time that suit was commenced, the judgment of the United States was a lien on lots 1 and 3. Polly Palmer died in November, 1872, and McElroy died in 1881. On October 30, 1883, the United States received a deed for lot 1, from the marshal of the district, based on the sale of June 6, 1871, in accordance with the order of October 16, 1871, and has been ever since June 6, 1871, the owner of lot 1, with full right of possession thereof, subject only to the right of the heirs-at-law of Polly Palmer. The amount due to the estate of Polly Palmer on the mortgage of August 7, 1869, and on the judgment of foreclosure has been paid.

The bill alleges that the United States offers to pay the amount, if any, due on the mortgage, in order to redeem the property, waives an answer on oath, and prays that an account

be taken of the amount due; that lot 3 be first subjected to its payment; that an account be taken of the rents and profits of lot 1, and if they have been more than sufficient to satisfy the mortgage debt, the defendants be decreed to pay the excess to the United States; and that the United States be permitted to redeem lot 1, and the defendants be adjudged to deliver up its possession to the United States.

The decision of the Circuit Court, reported in 25 Fed. Rep. 804, proceeded upon the ground that, as the government in this case came into a court of equity claiming the same rights as a private individual, and the case did not involve any question of governmental right or duty, the ordinary rules controlling courts of equity as to laches should be enforced; and that, as the bill was filed more than twelve years after the sheriff's deed had been made to Polly Palmer, and more than thirteen years after the sale on execution to the United States, the claim of the government was barred by its laches.

This decision of the Circuit Court was made in December, 1885, prior to the decisions of this court in the cases of *Van Brocklin* v. *State of Tennessee*, 117 U. S. 151; *United States* v. *Nashville Railway Co.*, 118 U. S. 120; and *United States* v. *Beebe*, 127 U. S. 338. These cases determine that the decree in the present case must be reversed.

In *Van Brocklin* v. *State of Tennessee*, p. 158, this court said: " The United States do not and cannot hold property, as a monarch may, for private or personal purposes. All the property and revenues of the United States must be held and applied, as all taxes, duties, imposts and excises must be laid and collected, 'to pay the debts and provide for the common defence and general welfare of the United States.'"

In the present case, the United States holds the title to the property in question, as it holds all other property, for public purposes and not for private purposes. So holding the title and the right of possession under their deed, it holds in the same manner, and for public purposes, the incidental right of redemption. In this view, the doctrine often laid down, and again enforced in *United States* v. *Nashville Railway Co.*, applies to this case. It was there said, p. 125 : " It is settled

beyond doubt or controversy — upon the foundation of the great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided — that the United States, asserting rights vested in them as a sovereign government, are not bound by any statute of limitations, unless Congress has clearly manifested its intention that they should be so bound. *Lindsey* v. *Miller*, 6 Pet. 666; *United States* v. *Knight*, 14 Pet. 301, 315; *Gibson* v. *Chouteau*, 13 Wall. 92; *United States* v. *Thompson*, 98 U. S. 486; *Fink* v. *O'Neil*, 106 U. S. 272, 281."

This doctrine is applicable with equal force, not only to the question of a statute of limitations in a suit at law, but also to the question of laches in a suit in equity. In *United States* v. *Beebe*, p. 344, it was said: "The principle that the United States are not bound by any statute of limitations nor barred by any laches of their officers, however gross, in a suit brought by them as a sovereign government to enforce a public right or to assert a public interest, is established past all controversy or doubt." These views entirely cover the present case.

It was suggested in the decision of the court below, as a ground for applying to the United States the doctrine of laches, that the government was not made a party to the foreclosure suit because it could not have been made such party except at its own will, and that it would be a hardship to the other parties to this suit to allow the government to lie by for so many years, and then come into a court of equity to assert the rights sought to be maintained in this suit. It is a sufficient answer to this view to say, that the principle we have announced has long been understood to be the rule applicable to the government, and that it rests with Congress, and not with the courts, to modify or change the rule.

*The decree of the Circuit Court is reversed, and the case is remanded to that court, with a direction to take such further proceedings as may be according to law and not inconsistent with this opinion.*

MR. JUSTICE FIELD did not sit in this case or take any part in its decision.