### UNITED STATES v NORRIS et al.

(Circuit Court of Appeals, Eighth Circuit. March 31, 1915.)

### No. 4089.

1. APPEAL AND ERROR ☞877—REVIEW—ERRORS AGAINST PARTY NOT APPEALING.

On an appeal by the government in a suit to cancel a patent to land, from a decree confirming the title of a purchaser from the patentee and granting a money recovery against the patentee, the decree could not be disturbed because of the meagerness of the evidence as to the patentee's fraud in procuring the patent; no testimony to the contrary having been offered, and no appeal having been taken by either defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3560–3572; Dec. Dig. ☞877.]

2. PUBLIC LANDS ☞120—CANCELLATION OF PATENTS—BURDEN OF PROOF.

In a suit by the government against a patentee and his grantee to cancel a patent to land, when it was shown that the patentee procured the patent by fraud, the burden rested upon the grantee to show the good faith of his purchase by testimony other than the recitals of his deed.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. ☞120.]

3. COURTS ☞375—FEDERAL COURTS—LIMITATIONS—SUITS BY UNITED STATES.

A state statute of limitations does not bar suits by the United States brought in their own courts in their sovereign capacity to assert a public interest or to enforce a public right.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 983; Dec. Dig. ☞375.]

4. PUBLIC LANDS ☞120—CANCELLATION OF PATENTS—LIMITATION OF ACTIONS.

Act March 3, 1891, c. 559, § 1, 26 Stat. 1093, providing that suits by the United States to vacate and annul any patent theretofore issued shall only be brought within five years from the passage of that act, and that suits to vacate and annul patents thereafter issued shall only be brought within six years after the issuance of the patent, applies to all suits by the government to vacate and annul patents to public lands issued under any law of the United States.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. ☞120.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. PUBLIC LANDS** &c⟿120—CANCELLATION OF PATENTS—LIMITATION OF ACTIONS.

Under Act March 3, 1891, § 1, a suit to cancel a patent to land, commenced within six years from the date of the patent, was not barred by limitations as against the patentee, though his grantee was not made a party to the suit until after limitations had run.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. &c⟿120.]

**6. LIMITATION OF ACTIONS** &c⟿127—COMPUTATION OF PERIOD OF LIMITATION—COMMENCEMENT OF ACTION.

Where a suit to cancel a patent to land was brought against the patentee, and subsequently an amended bill was filed against the patentee and his grantee, upon which an order was issued and served on the grantee requiring him to appear and plead, the suit was not commenced as against the grantee until the filing of the amended bill and the issuance of the warning order, with the bona fide intent that it should be promptly served.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 543–547; Dec. Dig. &c⟿127.]

**7. PUBLIC LANDS** &c⟿120—CANCELLATION OF PATENTS—LIMITATION OF ACTIONS.

A patent to land was issued December 31, 1903. On June 14, 1909, the patentee conveyed to a purchaser by a deed filed for record two days later. On August 16, 1909, the government filed a suit to cancel the patent for fraud, but the grantee was not made a party until 1911. *Held* that, as the grantee purchased within six years from the date of the patent, and placed his deed upon record before the suit was brought, and as there was no concealment of his purchase, or other fraud on his part to delay the commencement of the suit against him until limitations had run, the suit was barred as against him by Act March 3, 1891, § 1.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. &c⟿120.]

**8. LIMITATION OF ACTIONS** &c⟿5—STATUTORY PROVISIONS—CONSTRUCTION.

Courts cannot insert in a statute of limitations an exception which the statute itself does not contain.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 13–15; Dec. Dig. &c⟿5.]

**9. LIMITATION OF ACTIONS** &c⟿11—AGAINST WHOM AVAILABLE—SUITS BY THE UNITED STATES.

The government is not bound by a statute of limitations, unless Congress has clearly manifested its intention that it shall be so bound.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 35–39; Dec. Dig. &c⟿11.]

**10. APPEAL AND ERROR** &c⟿854—REVIEW—THEORY OF DECISION.

Where, in a suit to cancel a patent to land, a demurrer and answer by the patentee's grantee, setting up limitations, should have been sustained, but the court overruled the demurrer, and, on the hearing on the bill, answer, and proofs, confirmed the title to the land in the grantee, on the ground that there was no proof of his bad faith, though the grantee had offered no evidence to sustain the burden resting on him of proving good faith, the decree would not be reversed on the government's appeal, as a right decree or judgment will not be reversed because the trial court has given a wrong reason for it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3403, 3404, 3408–3424, 3427–3430; Dec. Dig. &c⟿854.]

&c⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

11. PUBLIC LANDS ⬥123—FRAUDULENT ENTRY—MONEY JUDGMENT—AMOUNT OF DAMAGES RECOVERABLE.

In a suit by the government to cancel a patent for a homestead entry, commuted to a cash entry, where it appeared that the land could not be recovered because limitations had run in favor of the patentee's grantee, the government could not recover from the patentee the value of the land in excess of the amount it received therefor, especially in the absence of any evidence of such value, and, there being no competent evidence of the value of the land, a judgment for the minimum government price of the land was the utmost that it was entitled to; it having in fact suffered no actual damage from the patentee's fraud.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. ⬥123.]

12. CONTRACTS ⬥265—RESCISSION—INABILITY TO RESTORE STATUS.

A court of equity will not rescind a contract when the parties thereto cannot be placed in statu quo, unless the clearest and strongest equity demands such relief.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1187; Dec. Dig. ⬥265.]

13. EVIDENCE ⬥265—ADMISSIONS—EFFECT—PUBLIC LANDS—FRAUDULENT ENTRY.

In a suit to cancel a patent to land, in which, because of the intervening rights of a third party, a money judgment was rendered against the patentee, the admission in the patentee's answer that he received $3,000 or its equivalent for the land from his grantee was not an admission that the land was then of that value; it having been improved and sold with the improvements for that amount, and there being no evidence as to the value of the land without the improvements.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1029–1050; Dec. Dig. ⬥265.]

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Suit by the United States against Edwin K. Norris and another. From a decree for insufficient relief, the United States appeals: Affirmed.

T. G. Chambers, Jr., Asst. U. S. Atty., of Oklahoma City, Okl. (Isaac D. Taylor, U. S. Atty., of Guthrie, Okl., on the brief), for the United States.

C. G. Horner, of Guthrie, Okl., for appellees.

Before SANBORN, Circuit Judge, and TRIEBER and REED, District Judges.

REED, District Judge. The United States brought this suit to cancel and set aside a patent issued by the government to the defendant Edwin K. Norris, December 31, 1903, in commutation of a homestead and settlement entry upon 160 acres of government land in Woodward county, Okl., to a cash entry, which patent it is alleged he obtained by false testimony produced by him before the local land office as to the time of his occupancy of the land and the improvements made thereon by him.

The original bill was filed August 16, 1909, and alleges that Norris was not then a resident of Oklahoma, but a citizen of and resident in the state of Texas. The suit was obviously brought under section 8,

**c. 137**, Act March 3, 1875 (section 738, Rev. St. U. S.), to establish an equitable title or claim to the land. Upon application of the complainant an order was issued by the court on the same day, August 16, 1909, requiring the defendant to appear and plead, answer, or demur to the bill on or before October 4, 1909. This order was served on Norris by the United States marshal at Ft. Worth, Tex., September 7, 1909. The record does not show what further was done under this order. On August 1, 1911, the complainant filed a second amended bill against Norris and A. L. Rounds as defendants, in which it is alleged that Norris fraudulently obtained the patent to the land December 31, 1903, as alleged in the original bill; that both defendants are nonresidents of Oklahoma and reside in Texas. It is then alleged that on June 14, 1909, Norris made a pretended conveyance of the land to the defendant Rounds for a pretended consideration of $3,000, for the purpose of preventing the complainant from recovering such land from him, and that defendant Rounds knew of the fraud perpetrated by Norris in obtaining the patent for and title to the land. What the first amended bill was, or what disposition was made of it, does not appear from this record. On August 2, 1911, upon application of the complainant, an order was issued by the court requiring the defendant Rounds to appear and plead, answer, or demur to said second amended bill on or before the 4th day of September, 1911; that being the September rule day, 1911. This order was served upon the defendant Rounds by the United States marshal August 12, 1911, at Ft. Worth, Tex.

Pursuant to this order Rounds appeared and filed a demurrer to the second amended bill for want of equity, and upon the further ground that as to him the cause of action alleged therein accrued more than six years prior to the filing of said amended bill and the issuance of said order, and was barred by the statute of limitations. On August 29, 1912, Norris moved to strike from the files the second amended bill, for the reason that the same is not *germane* to the original bill and not proper as an amended pleading. On the same day, August 29, 1912, this motion, and the demurrer of the defendant Rounds, were each overruled, to which the defendants severally excepted, and each was then granted until September 10th to answer the bill.

The defendants separately answered this bill—the defendant Norris admitting that he obtained the patent for the land on December 31, 1903, as alleged, but denying all fraud upon his part in procuring the same; and defendant Rounds answered, admitting the issuance of the patent to Norris on December 31, 1903, and alleging that he purchased the land of Norris on June 14, 1909, for $3,000, paid by him in good faith to Norris therefor, $500 of which was in cash, and $2,500 by note secured by a vendor's lien upon the property, without any knowledge or notice upon his part of the alleged fraud of Norris in obtaining the patent, and that Norris at the time of such purchase made and delivered to him a warranty deed of said land, which was duly recorded in the office of the register of deeds of Woodward county, Okl., on June 16, 1909, and again alleged that as to him the cause of action accrued more than six years prior to the filing of said amendment, and prior to the time he was made a party to the suit, and is barred by the

222 F.—2

statute of limitations. The general replication was not filed, but no question is raised because of this.

The case then came on for hearing upon the testimony of the complainant alone, neither defendant offering any testimony, and the court, upon April 7, 1913, made and entered a decree as follows:

"First. That the plaintiff has established the allegations of the bill that the defendant Edwin K. Norris failed to reside upon or cultivate the tract of land in controversy as required by law prior to final entry.

"Second. That the plaintiff has failed to establish that the defendant A. L. Rounds had notice and knowledge thereof, or that the said defendant purchased and acquired title to said land from said Edwin K. Norris in bad faith, and that the title of the defendant A. L. Rounds to said land should be and it is hereby quieted and confirmed, to which the plaintiff excepted and excepts.

"Third. That the plaintiff have and recover of the said Edwin K. Norris the price at which said land may be sold to homestead claimants, to wit, the sum of two hundred dollars ($200), together with the costs of this suit, which are taxed to and against the defendant Edwin K. Norris, to which Edwin K. Norris at the time excepted and excepts, and to which the plaintiff also excepted and excepts."

From this decree the complainant appeals, and assigns as error that the court erred:

(1) In holding that it was incumbent upon appellant to establish by proof that defendant Rounds purchased and acquired title to the land from Norris in bad faith, and in confirming and quieting the title to the land in Rounds.

(2) In holding that appellant was entitled to recover from Norris only $200 upon finding that he procured the patent fraudulently, and in not holding that appellant was entitled to recover from Norris $3,000 as the value of the land, upon decreeing that Rounds was a good-faith purchaser thereof.

[1] The testimony in the record as to the alleged fraud of Norris in procuring the patent is quite meager; but in the absence of any testimony to the contrary, or of an appeal by either of the defendants, the decree cannot rightly be disturbed upon this ground.

[2] The appellant offered no proof as to the alleged bad faith of Rounds in his purchase of the land from Norris, and contends that, having shown that Norris procured the patent by fraud, as held by the trial court, the burden then rested upon Rounds to show the good faith of his purchase, and that this he must do by testimony other than the recitals of his deed from Norris. This contention of the appellant, we think, must be upheld. Smith v. Sac County, 11 Wall. 139, 147, 20 L. Ed. 102; Wright-Blodgett Co. v. United States, 236 U. S. 397, 35 Sup. Ct. 339, 59 L. Ed. ——, and the cases there cited, wherein it is held that the recitals of a deed are insufficient to prove the payment of a valuable consideration without notice of the alleged fraud. The court therefore erred in confirming the title to the land in Rounds upon this ground, and unless the suit is barred by the statute of limitations, or appellant is otherwise estopped from maintaining the suit, the decree as to Rounds is erroneous.

[3] The state statute of limitations does not, of course, bar suits of the United States brought in their own courts in their sovereign capacity to assert a public interest or to enforce a public right. United States v. Thompson, 98 U. S. 486, 25 L. Ed. 194; United States v. Insley, 130 U. S. 263, 266, 9 Sup. Ct. 485, 32 L. Ed. 968.

[4, 5] But section 1 of the Act of March 3, 1891 (26 Stat. 1093, c. 559), provides:

"That suits by the United States to vacate and annul any patent heretofore issued shall only be brought within five years from the passage of this act, and suits to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents."

This section in terms applies to all suits by the government to vacate and annul patents to public lands issued under any law of the United States. United States v. Winona & St. P. R. R. Co., 165 U. S. 463, 475, 17 Sup. Ct. 368, 41 L. Ed. 789; United States v. Chandler-Dunbar Co., 152 Fed. 25, 28, 81 C. C. A. 221, affirmed 209 U. S. 447, 450, 28 Sup. Ct. 578, 52 L. Ed. 881. As to Norris the suit was commenced within six years from the date of the patent, and is not therefore barred by the statute of limitations. See Linn & Lane Lumber Co. et al. v. United States, 236 U. S. 574, 35 Sup. Ct. 440, 59 L. Ed. ——.

[6, 7] As to Rounds the suit was not commenced until the filing of the second amended bill, which was August 1, 1911, and the issuance of the warning order, so called, upon that bill August 2, 1911, with the bona fide intent that it be promptly served. United States v. American Lumber Co., 85 Fed. 827, 29 C. C. A. 431, and cases cited. This was seven years and seven months after the patent was issued. There is neither allegation nor proof of any concealment on the part of Rounds of his purchase of the property, nor of any other fraud on his part to delay the commencement of the suit against him until the statute of limitations had run. The bill avers that his purchase of the land from Norris was on June 14, 1909, and that the deed to him was filed for record in the office of the register of deeds for Woodward county, in which the land is situated; and it was so filed June 16, 1909. This was within six years from the date of the patent. In United States v. Winona & St. P. R. R. Co., above, Mr. Justice Brewer, speaking of the statute of limitations above cited, said (165 U. S. at page 476, 17 Sup. Ct. at page 371 [41 L. Ed. 789]):

"Under the benign influence of this statute it would matter not what the mistake or error of the land department was, what the frauds and misrepresentations of the patentee were, the patent would become conclusive as a transfer of the title, providing only that the land was public land of the United States and open to sale and conveyance through the land department. * * * It is true that these appellees cannot avail themselves of these limitations, because this suit was commenced before the expiration of the time prescribed, and we only refer to them as showing the purpose of Congress to uphold titles arising under certification or patent by providing that after a certain time the government, the grantor therein, should not be heard to question them."

The question of the concealment of the fraud from the land department until the statute had run, was not involved in that case. See United States v. Exploration Co., 203 Fed. 387, 121 C. C. A. 491. Nor is it involved in the case before us, for, as before stated, there is neither allegation nor proof of any concealment on the part of Rounds of his purchase of the land; in fact, he placed the evidence of his purchase upon the public record of land titles in the county where the land is situated before the suit was brought against Norris. In Wood v. Car-

penter, 101 U. S. 135, at page 139, 25 L. Ed. 807, Mr. Justice Swayne, speaking of statutes of limitation, said:

"Statutes of limitation are vital to the welfare of society and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence. While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary. Mere delay, extending to the limit prescribed, is itself a conclusive bar. The bane and antidote go together. * * * In this class of cases the plaintiff is held to stringent rules of pleading and evidence, and especially must there be distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether, by ordinary diligence, the discovery might not have been before made."

[8] Courts cannot rightly insert in the statute of limitations an exception which the statute itself does not contain. McIver v. Ragan, 2 Wheat. 24, 29, 4 L. Ed. 175.

[9] It is true that the government is not bound by a statute of limitations, unless Congress has clearly manifested its intention that it shall be so bound. United States v. Thompson, 98 U. S. 486, 25 L. Ed. 194; United States v. Nashville, etc., Ry. Co., 118 U. S. 120, 125, 6 Sup. Ct. 1006, 30 L. Ed. 81. But it is the clearly expressed intention of Congress that the government shall be bound by the statute in question. See United States v. Puget Sound Co. (D. C.) 215 Fed. 436. In United States v. Lee, Wilson & Co. (D. C.) 214 Fed. 630, 648, the suit was not to vacate or annul patents issued by the United States, but was a suit by the government to quiet its title to land that had never been surveyed by the government, and no certification or patent was ever issued, or could rightly have been issued by the land department. In the absence of any averment in the bill or proof showing specifically some reason why the suit was not brought within the six-year period, Rounds' demurrer and answer to the bill upon that ground should have been sustained, and the bill dismissed as to him.

[10] But it may be said that the case went to hearing in the trial court upon bill and answer and the proofs offered by the complainant, that Rounds has not appealed from the decree, and that it should be reversed because the trial court erred in confirming the title to the land in him. But Rounds challenged the right of the complainant to maintain the suit because not brought within the statutory period at the very threshold of the proceedings against him, and again in his answer. The ruling upon the demurrer was not final, but the final decree went in his favor. There was no occasion, therefore, for him to appeal, as the court only gave a wrong reason for a right decision. An appellate court will not reverse a right decree or judgment because the trial court has given a wrong reason for it. Smiley v. Barker, 83 Fed. 684, 687, 28 C. C. A. 9; Moffat v. Smith, 101 Fed. 771, 774, 41 C. C. A. 671; Buster et al. v. Wright, 135 Fed. 947, 959, 68 C. C. A. 505; Latting v. Owasso Mfg. Co., 148 Fed. 369, 370, 78 C. C. A. 183; White v. Railway Co., 122 Ind. 317, 23 N. E. 782, 786, 7 L. R. A. 257; Von Baumbach, Collector, etc., v. Sargent Land Co., 219 Fed. 31, 44, 134 C. C. A. 649.

Upon the argument of the case in this court counsel for defendant presented his own affidavit and that of the defendant Rounds, which were not disputed by counsel for the government in an affidavit filed by him in any material respect, which show that complainant is in no position to take advantage of the failure of Rounds to present evidence in support of his good faith purchase of the land; but as the decree in favor of Rounds must be affirmed for the reasons stated, we do not set forth or consider this showing. The decree as to Rounds should therefore be affirmed.

[11, 12] The appellant next complains of the decree because, on confirming the title to the land in Rounds, it awarded judgment in its favor against Norris for only $200, as the value of the land. That was the minimum government price of the land, and is what Norris was required to pay for it. Section 2301, Rev. Stats. U. S., as amended by Act March 3, 1891, c. 561, § 6, 26 Stat. 1098 (Comp. St. 1913, § 4589). When the suit was commenced, Norris had sold the land to Rounds, in whom the court confirmed the title. The appellant could not therefore, recover the land; but it had received from Norris the government price thereof, which presumptively was its then value, and in this proceeding seeks to recover from him the consideration he received from Rounds, without offering any evidence as to its value at any time up to the commencement of the suit. The appellant has in fact suffered no actual damage because of the alleged fraud of Norris, and it would be inequitable to permit it to recover the value of the land in excess, if any, of the amount it received therefor, especially in the absence of any evidence of such value. A court of equity is always reluctant to rescind a contract unless the parties thereto can be placed in statu quo. If this cannot be done, it will grant such relief only when the clearest and strongest equity demands it. Grymes v. Sanders et al., 93 U. S. 55, 62, 23 L. Ed. 798.

[13] The appellant contends, however, that the answer of Norris admits he received $3,000, or its equivalent, for the land from Rounds, and this is evidence of its then value. But see Wright-Blodgett Co. v. United States, 236 U. S. 397, 35 Sup. Ct. 339, 59 L. Ed. ——, above. This may be an admission, of Norris that he received that amount for the property in June, 1909; but it is not an admission that the land was then of that value, for it had been improved, and with its improvements sold to Rounds for that amount. Admitting, without deciding, that appellant is entitled to recover the value of the *land* in excess of the minimum government price thereof, it would not be entitled to recover for the improvements, and there is nothing before the court upon which it can determine the value of the land without the improvements.

Section 2 of the Act of March 2, 1896 (29 Stat. 43, c. 39 [Comp. St. 1913, § 4902]), provides that if any person claiming to be a bona fide purchaser of any land erroneously patented to another is made party to a suit to vacate or annul a patent, and is found by the court to be a good-faith purchaser thereof, the court shall confirm the title in him and award judgment against the patentee for the value of the land, "which in no case shall be more than the minimum government price

thereof." Whether or not this section applies to a patent for a home-stead entry, commuted to a cash entry, may admit of some doubt. The act of which it is a part is entitled:

"An act to provide for the extension of the time within which suits may be brought to vacate and annul land patents, and for other purposes."

This is broad enough to include all patents erroneously or fraud-ulently issued under any of the acts of Congress. The first section (Comp. St. 1913, § 4901), however, provides that:

"Suits by the United States to vacate and annul any patent to lands here-tofore erroneously issued under a railroad or wagon road grant, shall only be brought * * * within six years after the date of the issuance of such patents, and the limitation of section 8, chapter 561, of the Acts of the Second Session of the 51st Congress and amendments thereto are extended accord-ingly as to the patents herein referred to."

The reference to section 8, c. 561, is to the act of March 3, 1891 (26 Stat. 1099 [Comp. St. 1913, § 5114]). Sections 2 and 3 of the act of March 2, 1896, above referred to, are within the title of this act, and are broad enough to include a bona fide purchaser of lands erroneously or fraudulently patented under any of the acts of Congress, and would therefore include a fraudulent entry under the homestead law. The act indicates the purpose of Congress that as to lands erroneously or fraudulently patented, for which nothing has been received by the gov-ernment, it shall only recover the minimum government price thereof from the patentee upon the title being confirmed in a good faith pur-chaser from him; but, where the government has received the price fixed by it for the land, there seems to be no reason why it shall again recover its full value, including the excess, if any, above the govern-ment price. But, however this may be, and putting this section aside, we are of opinion that the appellant is not entitled to a judgment against Norris for more than $200, because there is no competent evidence in the record as to the value of the land. The appellant has recovered judgment against Norris for the utmost that it is entitled to upon this record, and the decree as to him should also be affirmed.

The decree as to both defendants is therefore affirmed.