UNITED STATES v. PITAN et al.

(District Court, D. South Dakota, S. D. July 7, 1915.)

1. COURTS ⬤══375—APPLICATION OF LIMITATIONS TO SUITS BY THE UNITED STATES.

State statutes of limitations do not bar suits brought by the United States, in her own courts and in a sovereign capacity, to assert a public interest or to enforce a public right.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 983; Dec. Dig. ⬤══375.]

2. LIMITATION OF ACTIONS ⬤══11—APPLICABILITY TO SUITS BY THE UNITED STATES.

The general government is not bound by any statute of limitations, unless Congress has clearly manifested its intention that it shall be so bound.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 35–39; Dec. Dig. ⬤══11.]

3. PUBLIC LANDS ⬤══123—CANCELLATION OF PATENTS—ACTIONS FOR DAMAGES —LIMITATIONS.

Under Act March 3, 1891, c. 561, § 8, 26 Stat. 1099 (Comp. St. 1913, § 5114), providing that suits by the United States to vacate and annul any

⬤══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

patent thereafter issued shall only be brought within six years after the issuance of such patent, an action for damages for fraud in obtaining a patent is not barred by the expiration of six years, as the statute does not, as claimed, bar the right, as well as the remedy, but is intended to give stability to titles depending on patents from the government.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. ⊚⇒123.]

**4. PUBLIC LANDS ⊚⇒123—PATENTS OBTAINED BY FRAUD—AMOUNT OF DAMAGES.**

In an action for damages for fraud in obtaining a patent for a homestead entry, commuted to a cash entry, the government is entitled to recover at least the minimum government price of the land.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. ⊚⇒123.]

**5. PUBLIC LANDS ⊚⇒123—PATENTS OBTAINED BY FRAUD—AMOUNT OF DAMAGES.**

Act March 2, 1896, c. 39, § 2, 29 Stat. 43 (Comp. St. 1913, § 4902), providing that if any person, claiming to be a bona fide purchaser of land erroneously patented to another, is made a party to a suit to vacate or annul the patent, and is found to be a good-faith purchaser thereof, the court shall confirm the title in him, and award judgment against the patentee for the value of the land, which in no case shall be more than the minimum government price thereof, is broad enough to include all patents erroneously or fraudulently issued under any of the acts of Congress.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. ⊚⇒123.]

At Law. Action for damages by the United States against Carl Pitan and another. On demurrer to the complaint. Demurrer overruled.

Robert P. Stewart, U. S. Atty., of Deadwood, S. D.
Bartine & Bartine, of Oacoma, S. D., for defendant Carl Pitan.

ELLIOTT, District Judge. This is an action at law to recover damages upon a complaint filed by the plaintiff herein, alleging in substance:

(1) The jurisdictional facts.

(2) That on the 10th day of May, 1902, plaintiff was the owner and in possession of the quarter section of land therein described, the same being public lands of the United States, part of the public domain, and subject to entry and open to settlement under the homestead laws of the United States.

(3) That on or about that date the defendant Henry presented to and filed in the local land office of the plaintiff at Chamberlain, S. D., her homestead application to enter said land under the homestead laws of the United States, and filed her homestead affidavit, in the usual form, in substance that her entry was made for the purpose of actual settlement and cultivation, and not for the benefit of any other person or persons; that she was acquainted with the character of the land; that she was not acting as the agent of any person in making such entry, nor in collusion with any person, to give such person the benefit of the land entered; that she did not apply to enter said land for the purpose of speculation, but in good faith, to obtain a home for herself; that she had not directly nor indirectly made, and would not

make, any agreement or contract in any way or manner with any person or persons by which the title which she might acquire thereto from the United States would or should inure in whole or in part to the benefit of any person except herself, and then and there paid the land office fees required by law, and received a receiver's receipt therefor, and her application to enter such land as a homestead was then and there duly granted.

(4) That on the 27th day of May, 1903, she filed notice of intention to make commutation homestead final proof upon said land, and the register of the land office duly designated July 13, 1903, as the time for making said final proof, and notice thereof was duly given in the manner provided by statute, rules, and regulations.

(5) That on said 13th day of July, 1903, defendant Henry made commutation cash entry for said land, and duly executed the affidavit required under section 2301, Revised Statutes of the United States (Comp. St. 1913, § 4589), and paid the sum of $80, the purchase price of said land, and received receiver's receipt for said commutation homestead entry, dated on that date. She also filed nonmineral affidavit, and testified in support of her said homestead entry for said lands, and the complaint alleges that the defendant Carl Pitan appeared as a witness in support of such entry, and that defendant Henry, by her commutation final proof made and caused it to appear by the testimony of herself and corroborating witness, including the defendant Pitan, under oath, in substance, that she had erected a frame house upon said land, consisting of a 10x12 foot house, with floor, doors, and windows; that she had made valuable improvements upon said land, of the value of $200; that she had resided continuously upon said lands for the full period required by law, with the intention of making it her home, and without absence, from the 26th day of September, 1902, to the date of final proof; that she had not sold or contracted to sell the same, or any part thereof, and was the bona fide owner thereof; that it was made to further appear, under oath, by the testimony of the defendants, that neither the said Carl Pitan nor any other person was interested in said homestead, and that the defendant Henry was acting in good faith in perfecting her said homestead entry; that she had not made said entry for the purpose of acquiring a homestead for the use and benefit of any other person, and had not acquired the same under any agreement whereby the title she might acquire would or should inure to the benefit of any other person.

(6) That thereafter, on the 14th day of March, 1904, there was issued and delivered to the said defendant Carl Pitan, by the local land office, at his request, a patent from the United States of America, in due and regular form, conveying to the defendant Henry the legal title to said lands, which patent was filed in the office of the register of deeds of the county in which the lands are situated January 27, 1906.

(7) That the defendant Henry conveyed, by warranty deed, the said lands embraced within the said homestead entry, to defendant Carl Pitan July 13, 1903, and such conveyance was duly filed and recorded

in the office of the register of deeds of the county in which the land was situated February 26, 1904.

(8) That said lands embraced within said homestead entry were thereafter, by the said defendant Carl Pitan, duly conveyed unto Emil Wilskie, and he ever since has been and now is in the possession thereof.

(9) The complaint further alleges, in substance, that the statements, representations, and testimony of the defendant Henry, contained and set forth in her said application to enter said land and her said homestead affidavit, and the statements, representations, and testimony made and subscribed by her upon her said commutation final proof, and the statements, representations, and testimony of the said Carl Pitan, as one of the witnesses in support of the homestead entry of said defendant Henry, were and are wholly false, fraudulent, and untrue, and were made and caused to be made by the defendants Henry and Pitan for the purpose of deceiving the plaintiff and its officials as to a material inquiry then and there pending, and that such representations and testimony were given, made, and subscribed without any belief on the part of the defendants Henry and Pitan that such statements and testimony were true; that the same were false, fraudulent, and untrue, and that in fact and in truth the defendant Henry was not familiar with the character of said land; that she had not in truth and in fact erected a frame house upon said land, but that the same was erected by the defendant Pitan at his own expense; that defendant Henry had not fenced said lands, but the same had been fenced theretofore by the defendant Pitan; that the defendant Henry had not made valuable improvements on said lands of the value of $200, or of any value; that she had not resided continuously, or at all, upon said lands during the period required by law, or at any time; that she had been absent from said lands continuously during the period required for her residence by law, with the exception of occasional visits to said land, for about the period of one week in September, 1902, and one week in February, 1903, and for about four days prior to the making of her said commutation final proof; that said statements, representations, and testimony were false, fraudulent, and untrue, in that defendants Henry and Pitan, prior to the filing of said homestead application and affidavit by the defendant Henry, to wit, on the 9th day of May, 1902, unlawfully conspired, combined, and agreed together to defraud the plaintiff of the title, possession, and use of said lands and premises embraced within the said homestead entry, by means of false, fraudulent, famed, illegal, and fictitious homestead entry of the lands therein described under the homestead laws of the United States.

(10) It is further alleged that in pursuance of said unlawful conspiracy and agreement, and to effect the object thereof, the defendant Pitan unlawfully persuaded, induced, and hired the defendant Henry to make the said homestead application and affidavit, and to take the oaths and give the testimony and make said commutation final proof, and to do the acts and things in the said complaint alleged, for the purpose of fraudulently procuring the title to the said lands from the plaintiff.

(11) The complaint thereupon states in detail the unlawful agreements and conspiracy covering the acts hereinbefore set forth, stating, in substance, that it was agreed that she was to do the things that it is alleged that she did for the use and benefit of said Pitan, and that the same was to be done at his expense.

(12) It is thereupon further alleged that all the said statements, representations, and testimony made, given, and subscribed by the defendants were false, fraudulent, and untrue, and were well known by each of them to be false, fraudulent, and untrue; that they were made for the purpose of deceiving the plaintiff and its officials, and that the defendant Pitan at all times therein set forth aided, abetted, and assisted, instigated, and participated in and benefited by such fraudulent acts, statements, representations, and testimony; that the defendant Pitan took said deed from defendant Henry with full knowledge then and there of said fraudulent and unlawful agreement, and of the false, fraudulent, and untrue proofs, statements, and testimony of the defendant Henry, and participated in and gave his own false testimony with reference thereto; that in making said final proof the defendant Henry acted as the agent of the defendant Pitan, and was in collusion with him for the purpose of securing the title to said land and deeding the same to him.

(13) That plaintiff, and especially its local officers in the land office, believed and relied upon the said false, fraudulent, and untrue statements, representations, and testimony made by the defendants, and thereby the plaintiff was induced to accept said commutation final proof and to allow said patent to issue in the manner stated.

(14) Plaintiff further alleges that the lands therein described were and are of the reasonable value of $1,600, and by reason of the fraud and deceit of the defendants Henry and Pitan the plaintiff was and is damaged in the sum of $1,600, and demands judgment therefor.

To this complaint the defendant Carl Pitan enters his appearance, and interposes a demurrer to plaintiff's complaint upon the ground that the same fails to state facts sufficient to constitute a cause of action against such defendant.

It will be observed that the patent for this land was issued more than six years prior to the commencement of this action, and this action is not an action in equity for the cancellation of the patent, but an action at law for the recovery of damages sustained by the plaintiff for the reasons set forth in the complaint, the substance of which is as above stated.

[1] It is contended in behalf of defendant Pitan that the cause of action is barred by the statute of limitations. The state statute of limitations does not bar suits of the United States, brought in her own courts in the sovereign capacity, to assert a public interest or to enforce a public right. U. S. v. Thompson, 98 U. S. 486, 25 L. Ed. 194; U. S. v. Inslay, 130 U. S. 263, 9 Sup. Ct. 485, 32 L. Ed. 968; U. S. v. Norris, 222 Fed. 14, 137 C. C. A. 552.

[2] It is further contended in behalf of defendant Pitan that, the statute of limitations adopted March 3, 1891 (26 Stat. 1099, c. 561), having run against annulment of the patent, the statute bars, not only

the remedy, but the right, and therefore this action will not lie for recovery on account of the fraud perpetrated in acquiring title to the lands. That the general government is not bound by any statute of limitations, unless Congress has clearly manifested its intention that it shall be so bound, is so well settled that it needs no citation of authority. U. S. v. Inslay, 130 U. S. 263, 9 Sup. Ct. 485, 32 L. Ed. 968; U. S. v. Jones (D. C.) 218 Fed. 973.

[3] The statute relied upon by the defendant, in so far as it is material here, is as follows:

"An act to repeal timber culture laws and for other purposes," approved March 3, 1891 (26 Stat. 1095, 1099, c. 561).

"Suits by the United States to vacate and annul any patent heretofore issued shall only be brought within five years from the passage of this act, and suits to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents." Section 8.

Does this statute bar, not only the remedy, but the right, and therefore will no other right of action lie for recovery on account of the fraud perpetrated in acquiring title to the lands in question? In view of the rule above stated, that the government is not bound by any statute of limitations unless Congress has clearly manifested its intention that it shall be so bound, can it be said that, by a fair interpretation of this provision of the law of 1891, Congress intended that the United States should from that time be limited, under circumstances such as are alleged in the complaint herein, to an action in equity to cancel the patent?

Clearly the United States, in common with the individual citizen, at the time of the enactment of this statute, might have more than one right of action growing out of the fraudulent acts of the defendants set forth in the complaint, and in my judgment it had the right to avail itself of its different remedies, the same as an individual. One of those remedies was the right to bring an action for damages sustained by the plaintiff by reason of the false and fraudulent representations made by the defendants, whereby the plaintiff was induced to and did part with the title to the land in question.

It is urged, however, that this remedy does not survive the expiration of the statutory period of six years named in this statute; it being conceded that while, in form, this statute only bars suits to annul the patent, by analogy to statutes of limitation generally, with regard to land, it should now be held to affect the title, and that with the loss of the right to retake the title, which has been divested through the defendants' wrong, it follows necessarily that with the loss of that right the plaintiff loses the right to bring the action to recover damages for the same wrong.

I have carefully considered the language of the court in United States v. Chandler Dunbar Co., 209 U. S. 447, 28 Sup. Ct. 579, 52 L. Ed. 881, and find some justification for the defendant's position; but considering the fact that the relief in that case was for the cancellation of the patent, and that the language there used had reference only to the question of plaintiff's right to that relief, I am satisfied it was not the intention of the court to hold that it was the intention of Congress,

when this statute of limitation was enacted, to extend the limitation further than its express language indicates. I am satisfied, also, that by the enactment of this statute there was no intention on the part of Congress to disburb the general governmental policy with reference to the bringing of actions generally by the United States to assert any public interest, or to enforce any public right, and that the rule with reference to such actions, including the right to bring this action for damages, is in no wise affected by the statute in question.

I am of the opinion that the sole purpose of this statute of limitation was to give stability to titles depending on patent from the government; its effect being to confirm such title after six years in the patentee, or his assignee, and to waive any right of action it may have had for annulment of the patent, but in no manner intended to bar the government of its right of action to recover damages for fraud such as is alleged in the complaint herein. It follows, therefore, that this court is of the opinion that the government of the United States has a right of action to recover damages against the defendants Henry and Pitan, sustained by it by reason of the alleged fraud of such defendants.

[4] Inquiry as to the proper measure of the plaintiff's damages is not necessary at this time. Suffice it to say that, upon proof of the allegations of the complaint, the plaintiff is entitled to recover *at least* the minimum government price of the land. U. S. v. Norris, 222 Fed. 14, 137 C. C. A. 552.

[5] In reaching this conclusion I have not failed to take into consideration the provisions of section 2 of the act of March 2, 1896 (29 Stat. 43, c. 39, Comp. Stat. 1913, § 4902) which provides that:

"If any person claiming to be a bona fide purchaser of any land erroneously patented to another, is made party to a suit to vacate or annul the patent, and is found by the court to be a good-faith purchaser thereof, the court shall confirm the title in him and award judgment against the patentee for the value of the land, *which in no case shall be more than the minimum government price thereof.*"

This act indicates the purpose of Congress that as to lands erroneously or fraudulently patented, for which nothing has been received by the government, it shall only recover the minimum government price thereof from the patentee, upon the title being confirmed in a good-faith purchaser from him, and is broad enough to include all patents erroneously or fraudulently issued under any of the acts of Congress. U. S. v. Norris, supra. I therefore, without intending to express an opinion as to whether or not this latter section does apply to a patent for a homestead entry, commuted to a cash entry, conclude that the complaint herein states a cause of action, at least for the minimum government price of the land. U. S. v. Norris, supra.

An order should be entered overruling the demurrer of the defendant Pitan, and giving him 20 days within which to file an answer, if he is so advised.