<hr />

INTERNATIONAL PAPER COMPANY *vs.* COMMONWEALTH.

Suffolk. December 2, 1918. — January 6, 1919.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Tax*, Remedy for unlawful taxation. *Jurisdiction. Limitations, Statute of. Words*, "Proceedings."

Where a remedy is created by statute and the time within which and the method according to which it must be pursued are prescribed by the statute as the conditions under which the remedy can be availed of, a court has no jurisdiction to entertain proceedings for relief begun at a later time or prosecuted in a different manner. This rule governs proceedings designed to afford relief against unlawful taxation and applies to the provisions of St. 1909, c. 490, Part III, § 70.

Under St. 1909, c. 490, Part III, § 70, which provides that an application by petition to recover the amount of a tax or excise alleged to have been exacted unlawfully shall be made "within six months after the payment of the same," and which also provides that, "The proceedings upon such petition shall conform, as nearly as may be, to proceedings in equity," it is not sufficient that

the petition was filed in court and that the subpœna upon it was taken out within the designated six months, if no service of the subpœna was made upon the Treasurer and Receiver General or upon the Attorney General within that time and no reasonable effort was made to serve such subpœna seasonably. Where there was no such service nor attempt at service the petition must be dismissed.

PETITION, filed in the Supreme Judicial Court on November 12, 1917, under St. 1909, c. 490, Part III, § 70, by the International Paper Company, a corporation organized under the laws of the State of New York, to recover $5,500 as the amount of an excise paid by the petitioner to the Commonwealth on May 21, 1917, and alleged to have been exacted unlawfully.

An order of notice to be served on the Treasurer and Receiver General and the Attorney General was issued on the date of the filing of the petition, but it appears never to have been served.

More than four months later, on March 14, 1918, another order of notice was issued, which was served upon the Treasurer and Receiver General and upon the Attorney General on April 4, 1918.

On May 22, 1918, the Attorney General in behalf of the Commonwealth filed a motion to dismiss the petition upon the following grounds:

"1. The petition is not an application for the abatement of the tax described therein duly made within the time and in accordance with the conditions set forth in St. 1909, c. 490, Part III, § 70.

"2. The petition is not brought within six months of the payment of the tax as required by St. 1909, c. 490, Part III, § 70.

"3. No service of the original order of notice issued on the filing of the petition was ever made upon the respondent as required by St. 1909, c. 490, Part III, § 70.

"4. The service of an order of notice issued upon this petition long after the filing thereof and more than six months after the payment of the tax is not a compliance with the conditions imposed by St. 1909, c. 490, Part III, § 70."

The case was heard by *Crosby*, J., upon the petition and the respondent's motion to dismiss. It was admitted by the counsel for the respondent that the motion to dismiss was based exclusively upon the Commonwealth's contention as to the proper construction of St. 1909, c. 490, Part III, § 70.

The petitioner introduced the testimony of the assistant clerk

of the Supreme Judicial Court as to the long continued practice in equity in that Court to the effect that *alias* orders of notice and subpœnas are issued upon the request of the plaintiff at any time, whenever the original order of notice or subpœna has not been served; also the existing and former rules in equity of the Supreme Court of the United States to the same effect.

The single justice reported and reserved the motion to dismiss for determination by the full court. If the motion should be denied, a decree was to be entered for the petitioner to recover the tax, with interest and costs, as prayed for in the petition. If the motion should be granted, a decree was to be entered dismissing the petition.

St. 1909, c. 490, Part III, § 70, is as follows: "Any corporation or association aggrieved by the exaction of said tax or excise or of any portion thereof may, within six months after the payment of the same, whether such payment be after or before the issue of the warrant mentioned in the preceding section, apply by petition to the Supreme Judicial Court, setting forth the amount of the tax or excise and costs thereon so paid, the general legal grounds and the specific grounds in fact, if any, upon which it is claimed such tax or excise should not have been exacted. Said petition shall be the exclusive remedy and shall be entered and heard in the county of Suffolk. A copy of the same shall be served upon the Treasurer and Receiver General and upon the Attorney General. The proceedings upon such petition shall conform, as nearly as may be, to proceedings in equity, and an abatement shall be made of only such portion of the tax or excise as was assessed without authority of law. In case said tax or excise has heretofore been exacted or is hereafter exacted in consequence of any law or statute of any other State of the United States, then the application above provided for may be made at any time within six years after the exaction of said tax or excise or any portion thereof."

*G. L. Mayberry & C. A. Snow,* (*F. T. Benner & W. P. Everts* with them,) for the petitioner.

*W. H. Hitchcock,* Assistant Attorney General, for the Commonwealth.

RUGG, C. J. This is a petition under St. 1909, c. 490, Part III, § 70, to recover an excise tax alleged to have been exacted contrary to law. The petition, which avers that the tax was paid on May 21,

1917, was filed on November 12, 1917. On the same day an order of notice was issued returnable on the first Monday of December following, which, so far as appears, never was in the hands of an officer and never was served. On March 14, 1918, another order of notice issued, service of which was acknowledged on the same day. The Attorney General filed a motion to dismiss the petition on the general ground that the petition was not brought and notice thereof served within the time prescribed by law. The decision of the question thus raised depends upon the terms of said § 70 printed on page 9. There must be direct compliance with the terms of this statute. The Commonwealth has consented to be impleaded only on the conditions there set forth. *McArthur Brothers Co.* v. *Commonwealth,* 197 Mass. 137.

Where a remedy is created by statute and the time within which and the method according to which it must be pursued are prescribed as conditions under which it can be availed of, the court has no jurisdiction to entertain proceedings for relief begun at a later time or prosecuted in a different method. *Peterson* v. *Waltham,* 150 Mass. 564. *Lancy* v. *Boston,* 185 Mass. 219. *Partridge* v. *Arlington,* 193 Mass. 530. *Wheatland* v. *Boston,* 202 Mass. 258. This rule governs proceedings designed to afford relief against illegal taxation. *Cheney* v. *Assessors of Dover,* 205 Mass. 501, 503. It is applicable to the provisions of said § 70.

Application for abatement of the tax must be made by filing the petition within six months after the payment of the excise. That is the only express requirement as to time found in the section. It is to be noted, however, that it is not provided in § 70 that the filing of a petition without process should constitute the commencement of proceedings, although express language to that end often has been used in statutes, presumably when so intended by the Legislature. See, for example, R. L. c. 48, § 111; c. 197, § 9. The parties are not in court on the mere filing of the petition. Something more is necessary. The only specific provision in the statute as to service of process on the petition is that a copy "shall be served upon the Treasurer and Receiver General and upon the Attorney General." No time is named for such service. But it is provided that "the proceedings upon such petition shall conform, as nearly as may be, to proceedings in equity." In this connection the word "proceedings" is of broad signification. It comprehends

every step from the filing of the petition until the final determination of the controversy. It includes the issuance and service of process by which the Commonwealth is to be summoned into court. *Lait* v. *Sears,* 226 Mass. 119, 124. Section 70 of the tax act states the conditions under which a petition may be filed. One of these is in the nature of a limitation as to time. Whether this limitation arises in determining a condition of jurisdiction or in determining whether the statute of limitations had been barred, it is one and the same question and must be governed by the same principles. The real question, therefore, is whether a statute of limitations ordinarily is barred by the simple filing of a petition in equity, or whether in addition there must be the taking out of a subpœna and an attempt in good faith to serve it.

That point has never been presented for decision in this Commonwealth. It has arisen in the courts of numerous other jurisdictions. The decisions are not in harmony. It was early held by Chancellor Walworth in *Hayden* v. *Bucklin,* 9 Paige, 512, that "the filing of a bill and taking out a subpœna thereon, and making a bona fide attempt to serve it without delay, may be considered as the commencement of the suit for the purpose of preventing the operation of the statute of limitations." To the same effect is *Fitch* v. *Smith,* 10 Paige, 9. The point was discussed elaborately in *United States* v. *American Lumber Co.* 29 C. C. A. 431, with a review of cases, and it was said that "It has been the interpretation of the English chancery practice, as the same has been followed and applied by the American State courts, that a suit is begun, within the meaning of the statute of limitations, when the subpœna has been issued, provided that its issuance has been followed by a bona fide effort to serve the same." There are other statements of the rule to the same general effect. *United States* v. *Norris,* 137 C. C. A. 552, 557. *Pindell* v. *Maydwell,* 7 B. Mon. 314. *Fairbanks* v. *Farwell,* 141 Ill. 354, 368. *Peck* v. *German Fire Ins. Co.* 102 Mich. 52. *Dedenbach* v. *Detroit,* 146 Mich. 710. *Nicholas* v. *British America Assurance Co.* 109 Ga. 621. See *County* v. *Pacific Coast Borax Co.* 38 Vroom, 48. The weight of authority seems to support this rule. It was said in *Linn & Lane Timber Co.* v. *United States,* 236 U. S. 574, at page 578, "The bills were filed and subpœnas were taken out and delivered to the marshal for service before the statute had run, reasonable diligence was shown in getting.

service and therefore the rights of the United States against all the patents were saved. For when so followed up the rule is pretty well established that the statute is interrupted by the filing of the bill." But there are contrary decisions. *Armstrong Cork Co.* v. *Merchants' Refrigerating Co.* 107 C. C. A. 93, 100. *Dilworth* v. *Mayfield*, 36 Miss. 40, 52. *State* v. *Wilson*, 216 Mo. 215, 292. *Aston* v. *Galloway*, 38 N. C. 126.

There are numerous expressions to be found in the books that a suit in equity is deemed to be commenced with the filing of the bill. That is doubtless true as a convenient, abbreviated and generally applicable statement. It governs in the great majority of cases because ordinarily there is no delay in taking out a subpoena or in service of some other sort by order of the court. See, for instance, *Farmers' Loan & Trust Co.* v. *Lake Street Elevated Railroad*, 177 U. S. 51, 60; *Clark* v. *Slayton*, 63 N. H. 402. But these expressions have not been used commonly with reference to the simple filing of a bill in equity in its effect upon the statute of limitations.

On reason and apart from authority it seems to us to be the sound rule that the mere filing of the bill is not enough to stop the running of the statute of limitations. The simple filing of a bill affords the defendant in the ordinary case no information and gives him no notice. It is not the duty of the clerk to issue a subpoena as of course without request of the party plaintiff. As matter of common practice he does it upon request of the plaintiff. An action at law by which the statute of limitations is tolled, although deemed *prima facie* to have been commenced on the date of the writ, must be served under the law within a comparatively brief time. It is not enough that a writ be filled out and filed in court. That would not be the commencement of an action at law. It must be put in the hands of an officer for service. It thus is necessary that the defendant have seasonable notice. It follows inevitably that he may be given his day in court within such time as certainly may enable him to appear and defend without detriment by lapse of time. *Gardner* v. *Webber*, 17 Pick. 407, 412. But, if the mere filing of the bill of complaint is deemed the commencement of a suit in equity without more, whether the defendant may know anything about the matter and be able to defend it seasonably may depend wholly upon the option of the plaintiff, subject

only to provisions which apply to motions to dismiss for want of prosecution. As to the statute of limitations, which in general applies equally at equity as in law, *Farnam* v. *Brooks,* 9 Pick. 212, 243, the defendant in equity would be in a much worse posture and the plaintiff in a far better position than in an action at law. Such inequality ought not to be nourished except for strong reasons.

The fundamental conception of a proceeding in court is process or something in the nature of process or notice by which the parties defendant may be brought before the court for the adjudication of rights. The mere filing of a petition without more does not partake of the nature of process. It is a step preliminary to something in the nature of process. By and of itself, if nothing further is done, it accomplishes nothing. The sovereign power is not exerted in favor of determining the rights of parties until it has responded by some form of process in approval of a request to that end by a party.

This conclusion receives some confirmation from R. L. c. 159, § 8, which provides among other matters that "Suits in equity may be commenced by bill or petition, with a writ of subpœna according to the usual course of proceedings in equity." The fair implication of these words is that the commencement of the suit includes both the filing of a petition and the issuance of a subpœna, and that one without the other does not constitute such commencement. This is made quite plain by reference to the earlier words of the Revised Statutes, where, in c. 90, § 117, it is provided that "Suits in equity may be commenced by a writ of subpœna, according to the usual course of proceedings in chancery." See, also, Rev. Sts. c. 107, § 22; Gen. Sts. c. 113, § 3; Pub. Sts. c. 151, § 5. Presumably no change of meaning has been intended in subsequent revisions. *Main* v. *County of Plymouth,* 223 Mass. 66, 69. If, for example, an injunction issues and is served in the first instance, doubtless that may be regarded as sufficient notice of process to bar the statute. See, in this connection, *Stone* v. *Stone,* 163 Mass. 474, where, however, the statute of limitations was not involved. So far as there is any inference to be drawn from *Bancroft* v. *Sawin,* 143 Mass. 144, it seems in harmony with this result.

There is nothing in *Hudson Electric Light Co.* v. *Hudson,* 163

Mass. 346, at variance with this conclusion. The statute there under consideration did not import equitable procedure into its terms. That was a proceeding under St. 1891, c. 370, (now R. L. c. 34,) which enabled a town to manufacture and distribute gas or electricity for lighting. It was required by § 3 of that act as a condition precedent to exercising that authority that the town should vote to embark in the business by a two thirds vote of its voters at two town meetings called therefor, the second to be not less than two nor more than thirteen months after the first. It was provided by § 12 that when such votes had been passed by a town within which, at the time of the first vote, a corporation was engaged in the same business, the town should, at the election of such corporation to be manifested by compliance with the terms of the act, purchase the whole or a part of such corporation's plant. It was required by § 13 that such corporation, in order to enforce the obligation of the town to purchase its plant, should file with the town clerk within thirty days after the passage of the final vote of the town "a detailed schedule describing such property and stating the terms of sale proposed. If the parties fail to agree as to what shall be sold, or what the terms of sale and delivery in accordance with the provisions of this act shall be, either party may within sixty days after the filing of the schedule apply by petition" to the court "setting forth the facts" and thereafter the court "shall, after giving both parties an opportunity to be heard, appoint a special commission or commissioners" whose duty was after hearing to adjudicate upon the conflicting contentions of the parties. No further provision was made as to process. All that was said in the course of that opinion was with reference to that unusual statute, *Swan* v. *Justices of the Superior Court*, 222 Mass. 542, 545, and in that connection occurs the statement that "The petition when filed was before the court for immediate action." Manifestly that was a special proceeding of a peculiar nature where the parties were at issue and in controversy from the very beginning with ample notice and knowledge respecting the whole matter. A municipality which votes to acquire an electric light plant under the provisions of such an act may be presumed to have the equivalent of notice of an application filed by the company under its terms.

There is special reason for construing this statute with some

strictness, for it relates to abatement of taxes, upon the collection and retention of which the support of government depends. Controversies respecting them have been thought by the Legislature to require special provisions as to the limitation of proceedings.

Applying this principle to the case at bar, it is manifest that the petitioner has not done enough to bar the statute of limitations. The taking out of a subpœna when the application was filed, without more, was not sufficient. Reasonable effort must be made to serve the subpœna seasonably. The statute provides that the service must be made upon two State officers, the Treasurer and Receiver General and the Attorney General. Plainly, there can be no reason for not serving according to the tenor of the first subpœna. There could have been no *bona fide* attempt to serve it without delay. The courts take cognizance of the fact that these officers are at the capital of the Commonwealth and constantly accessible. The failure to serve or to make return by officer on the first subpœna under these circumstances leaves the matter as if no subpœna were taken out. The statute of limitations is not barred under these circumstances. Likewise, there has been no compliance with the condition of jurisdiction. The petitioner has not brought itself within the provisions of St. 1909, c. 490, Part III, § 70.

The motion to dismiss was seasonably filed. It must be considered on its merits. Equity Rule 8. See St. 1917, c. 101.

The motion to dismiss must be granted for the reasons stated. In accordance with the terms of the report, decree is to be entered dismissing the petition.

*So ordered.*