UNITED STATES v. KOLENO et al.

(Circuit Court of Appeals, Eighth Circuit. September 4, 1915.)

No. 4095.

1. LIMITATION OF ACTIONS ⊕⇒11—PARTIES—UNITED STATES.

Generally the statute of limitations does not run against the United States.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 35–39; Dec. Dig. ⊕⇒11.]

2. PUBLIC LANDS ⊕⇒120—PATENTS—FRAUD—ACTION FOR DAMAGES—LIMITATIONS.

Act March 3, 1891, c. 561, § 8, 26 Stat. 1099, and Act March 3, 1891, c. 559, 26 Stat. 1093 (Comp. St. 1913, § 5114), providing that suits by the United States to annul any patent theretofore issued shall be brought within five years from the passage of the act, and that suits to annul patents thereafter issued shall be brought within six years after the issuance of such patents, was strictly a statute of limitations, and did not create the right to maintain an action to set aside the patent.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. ⊕⇒120.]

3. PUBLIC LANDS ⊕⇒120—PATENTS—FRAUD—EFFECT.

Patents procured from the United States by fraud are not void but voidable, and the government may elect to rescind the patent, or to ratify it and sue for damages.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. ⊕⇒120.]

4. PUBLIC LANDS ⊕⇒120—PATENTS—FRAUD—BONA FIDE PURCHASER.

No action lies by the United States against bona fide purchasers from a patentee for value without notice of fraud, which right of the purchaser exists independent of any statutory provision in his behalf.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. ⊕⇒120.

Bona fide purchasers of public lands, see notes to United States v. Detroit Timber & Lumber Co., 67 C. C. A. 13; McClure v. United States, 111 C. C. A. 4.]

5. ATTORNEY GENERAL ☞7—PATENTS—FRAUD—RATIFICATION AND RECOVERY OF DAMAGES—ELECTION BY ATTORNEY GENERAL.

　　The government's right to elect to rescind a patent procured by fraud, or to ratify it and sue for damages, may be exercised by the Attorney General through the United States district attorney.

　　[Ed. Note.—For other cases, see Attorney General, Cent. Dig. §§ 8–10; Dec. Dig. ☞7.]

In Error to the District Court of the United States for the District of Wyoming.

Suit at law by the United States of America against Lewis Koleno and another. Judgment for defendants, dismissing the suit, and plaintiff brings error. Reversed, and case remanded, with direction to set aside the order of dismissal, to overrule the demurrer to the petition, and to give defendants an opportunity to answer.

Charles L. Rigdon, U. S. Atty., of Cheyenne, Wyo. (David J. Howell, Asst. U. S. Atty., of Cheyenne, Wyo., on the brief), for the United States.

Clark & Clark, of Cheyenne, Wyo., for defendants in error.

Before SANBORN, ADAMS, and SMITH, Circuit Judges.

SMITH, Circuit Judge. This is a suit at law to recover of the defendants the alleged value of certain land patented by the United States to defendant Lewis Koleno, on June 30, 1906, under the timber and stone law. Act June 3, 1878, c. 151, 20 Stat. 89.

The petition alleges that the defendant Koleno was a minor and ineligible to make the entry for that reason at the time of the entry of said land, that his witnesses were the defendant Samuel Joss and one Clara M. Joss, that on the date on which proof was made on said entry, to wit, March 9, 1906, the said Lewis Koleno, in pursuance of a previous agreement, did convey the land to said Samuel Joss, that said lands were chiefly valuable for grazing purposes and a part of them for agricultural purposes, and they were obtained from the government by false testimony of the defendants Koleno and Joss. It is further alleged that the defendant Joss mortgaged this land with others on October 7, 1911, to George W. Metcalf as security for $19,760, and the petition prays that the government recover the value of said lands at the time of the patent, which is alleged to have been $650.64 and costs.

A demurrer was filed:

"That said petition does not state facts sufficient to constitute a cause of action against these defendants."

This demurrer was sustained, and, the plaintiff failing to plead over, the case was dismissed, and the United States sued out this writ of error. The demurrer being upon the ground that the petition did not state facts sufficient to constitute a cause of action against the defendants, it becomes important to first ascertain, if possible, what defense was relied on by the defendants and by the district court. In their brief appellees say:

"The demurrer was presented to the court below, and we assume was sustained by that court upon two grounds: (1) That the necessary result of the suit to recover the value of lands fraudulently acquired is the ratification of the patent, and Congress has never authorized the Attorney General or any other officer to so bind the government. (2) That it cannot be presumed that Congress, which has enacted a statute of limitation upon suits in equity to recover the land itself, has intended that there should be any recovery of the value of the land by action at law, the prosecution of which would never be barred."

The brief continues:

"It cannot be contended, of course, that the federal government does not have all of the legal rights of any individual providing the statutes permit of their exercise, and among such rights of course is the right to recover by an action at law the damages sustained through fraudulent acquisition of public lands and the alternative right, at the option of the government, to recover the lands by suit in equity. But undoubtedly the government in the exercise of any such legal right is bound by the same legal rules as are applicable to any private individual, and one of these rules is that any person who has been fraudulently deprived of property and who elects to recover by an action at law the damages sustained thereby, instead of recovering the property itself, is conclusively presumed to ratify the transaction and cannot thereafter recover the property itself.

"It is our contention that neither the United States district attorney nor the Attorney General, nor even the President himself, has the power to assent to a fraudulent transfer of public lands; that the title to public land can be acquired, as has been frequently determined by the federal courts, only by compliance with the public land laws or through the action of the statute of limitations; and that no administrative or executive officer can bind the federal government by assenting to the transfer of public lands in any manner not expressly authorized by the public land laws."

[1, 2] Generally the statute of limitations does not run against the United States. United States v. Knight, 14 Pet. 301, 315, 10 L. Ed. 465; United States v. Throckmorton, 98 U. S. 61, 64, 25 L. Ed. 93; and numerous other decisions. Congress, however, passed two statutes in the following form:

"Sec. 8. That suits by the United States to vacate and annul any patent heretofore issued shall only be brought within five years from the passage of this act, and suits to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents." Chapter 559, Acts 51st Congress, 26 Statutes, 1093; Chapter 561, Acts 51st Congress, 26 Statutes, 1095, 1099.

[3-5] The present concern is, not whether this would operate as a limitation upon an action by the government for damages for deceit, but whether the government had an action for deceit before this statute was passed, but which should be denied it since its passage even within the period fixed for bringing suit to annul the patent. This statute was strictly one of limitation and did not create the right to maintain an action to set aside the patent. Patents procured from the United States by fraud were never void, but voidable (Moran v. Horsky, 178 U. S. 205, 20 Sup. Ct. 856, 44 L. Ed. 1038; United States v. Stinson, 197 U. S. 200, 25 Sup. Ct. 426, 49 L. Ed. 724); and it was always held that no action would lie by the United States against bona fide purchasers from a patentee for value without notice of the fraud (United States v. Stinson, 197 U. S. 200, 25 Sup. Ct. 426, 49 L. Ed. 724; United States v. California Land Co., 148 U. S.

31, 41, 13 Sup. Ct. 458, 37 L. Ed. 354; United States v. Winona, etc., R. R. Co., 165 U. S. 463, 479, 17 Sup. Ct. 368, 41 L. Ed. 789); and it is especially pointed out in the last-named case that the defense of a bona fide purchaser existed entirely independent of any statutory provision in his behalf. If a fraud had been perpetrated upon the government in the issuance of the patent it had before the statute of limitations act was passed the right of its election of remedies; it might elect to rescind the voidable patent, or it might elect to ratify it and sue for damages. The question at once arises: Who was authorized to make this election of remedies? The petition states that it is filed "under and in pursuance to express instructions of Attorney General of the United States."

The powers of the Attorney General are not specifically enumerated in the statutes of the United States, but:

"Congress in creating the office of Attorney General and in using that term in the statutes referred to at the beginning of this paragraph had reference to a similar office under the English law and therefore impliedly conferred upon him authority, and made it his duty, to supervise the conduct of all suits brought by or against the United States." Volume 2, Ruling Case Law, page 917.

The Supreme Court has said:

"It is denied that the Attorney General has any general authority under the Constitution and laws of the United States to commence a suit in the name of the United States to set aside a patent, or other solemn instrument issued by proper authority.

"It is quite true that the Revised Statutes, in the title which establishes and regulates the Department of Justice, simply declares, in section 346 (Comp. St. 1913, § 515), that 'there shall be at the seat of government an Executive Department to be known as the Department of Justice, and an Attorney General, who shall be the head thereof.' There is no very specific statement of the general duties of the Attorney General, but it is seen from the whole chapter referred to that he has the authority, and it is made his duty, to supervise the conduct of all suits brought by or against the United States, and to give advice to the President and the heads of the other departments of the government. There is no express authority vested in him to authorize suits to be brought against the debtors of the government, or upon bonds, or to begin criminal prosecutions, or to institute proceedings in any of the numerous cases in which the United States is plaintiff; and yet he is invested with the general superintendence of all such suits, and all the district attorneys who do bring them in the various courts in the country are placed under his immediate direction and control. And notwithstanding the want of any specific authority to bring an action in the name of the United States to set aside, and declare void an instrument issued under its apparent authority, we cannot believe that, where a case exists in which this ought to be done, it is not within the authority of that officer to cause such action to be instituted and prosecuted. He is undoubtedly the officer who has charge of the institution and conduct of the pleas of the United States, and of the litigation which is necessary to establish the rights of the government.

"If the United States in any particular case has a just cause for calling upon the judiciary of the country, in any of its courts, for relief by setting aside or annulling any of its contracts, its obligations, or its most solemn instruments, the question of the appeal to the judicial tribunals of the country must primarily be decided by the Attorney General of the United States. That such a power should exist somewhere, and that the United States should not be more helpless in relieving itself from frauds, impostors, and deceptions than the private individual, is hardly open to argument. The Constitution itself declares that the judicial power shall extend to all cases to which the

United States shall be a party, and that this means mainly where it is a party plaintiff is a necessary result of the well-established proposition that it cannot be sued in any court without its consent. There must, then, be an officer or officers of the government to determine when the United States shall sue, to decide for what it shall sue, and to be responsible that such suits shall be brought in appropriate cases. The attorneys of the United States in every judicial district are officers of this character, and they are by statute under the immediate supervision and control of the Attorney General. How, then, can it be argued that if the United States has been deceived, entrapped, or defrauded into the making, under the forms of law, of an instrument which injuriously affects its rights of property, or other rights, it cannot bring a suit to avoid the effect of such instrument, thus fraudulently obtained, without a special act of Congress in each case, or without some special authority applicable to this class of cases, while all other just grounds of suing in a court of justice concededly belong to the Department of Justice, and are in use every day?" United States v. San Jacinto Tin Co., 125 U. S. 273, 278, 8 Sup. Ct. 850, 854 (31 L. Ed. 747).

This was before the statute of limitations cited was passed, and clearly corroborates the assumption that the right to maintain the action to annul a patent was not created by the statute cited, but the statute was one purely of limitation.

It must be seriously contended that the Attorney General may elect to rescind the solemn act of the President or the Interior Department, but he cannot make the election to ratify it and sue for damages. It seems clear that the right to do one necessarily carries with it the right to do the other, and if he can rescind he can ratify.

The action of the District Court is reversed, and the case remanded, with directions to set aside the order of dismissal and sustaining the demurrer to the petition and overrule the latter and give the defendants an opportunity to answer.