## UNITED STATES v. JONES.

### (Circuit Court of Appeals, Ninth Circuit. June 16, 1917.)

#### No. 2809.

**1. PUBLIC LANDS ☞35(3), 135(2)—HOMESTEADS—RESIDENCE—ALIENATION.**

Under the homestead law the entryman must in good faith claim the land for his own benefit, and can make no agreement for alienation, and must reside upon the land continuously for the time that the law requires and must make it his home.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 74, 353, 354.]

**2. PUBLIC LANDS ☞123—FRAUD—RIGHT OF ACTION FOR VALUE OF LAND.**

Where defendant caused certain honorably discharged soldiers to make homestead entries under Act August 15, 1894, c. 290, 28 Stat. 286, for his benefit, and procured them to make false and fraudulent representations and affidavits in their application and final proofs respecting alienation, residence, cultivation, and improvements, and these representations were relied upon, and in reliance upon them patents were issued, the government had a right of action against defendant for the value of the land, though, due to the erroneous holding of the land department that the entrymen were entitled to deduct from the required period of residence the periods of their respective military service, the authorized showing as to residence, etc., by the entrymen did not entitle them to the issue of patents.

**3. LIMITATION OF ACTIONS ☞11(1)—SUITS BY GOVERNMENT.**

Though suits to avoid or annul patents procured by fraud would be barred under Act March 3, 1891, c. 561, § 8, 26 Stat. 1099 (Comp. St. 1916, § 5114) requiring such actions to be brought within six years, the government could sue to recover the value of the land procured from it through mistake or fraud, waiving any right of action it might have had for annulment of the patent, as the government is not bound by any statute of limitations unless Congress clearly manifests its intention that it shall be so bound.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 35, 36.]

**4. PUBLIC LANDS ☞35(3)—COMMUTATION OF ENTRY—RESIDENCE.**

Act Aug. 15, 1894, provides for the disposition of certain lands within the Siletz reservation under the Town-Site and Homestead Laws, and requires three years' actual residence to be established as a prerequisite to title or patent. Rev. St. § 2301, as amended by Act March 3, 1891, c. 561, § 6, 26 Stat. 1098 (Comp. St. 1916, § 4589), provides that nothing therein shall prevent any person availing himself of the benefits of section 2289 (Comp. St. 1916, § 4530) from paying the minimum price for the land entered after the expiration of 14 months, and obtaining a patent therefor upon making proof of settlement and residence and cultivation for such period of 14 months. *Held*, that a commuted entry by one entering land under the act of 1894 is controlled by section 2301, and proof of settlement, residence, and cultivation for 14 months is required, but the requirements as to the character of residence are not as strict as under the act of 1894, calling for actual residence.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 74.]

In Error to the District Court of the United States for the District of Oregon; Chas. E. Wolverton, Judge.

Action by the United States against Williard N. Jones. Judgment for defendant on the pleadings ([D. C.] 232 Fed. 218), and the government brings error. Reversed and remanded, with directions.

See, also (D. C.) 218 Fed. 973.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The United States brought action against the defendant, Jones, for damages for alleged fraud and deceit committed by Jones in securing the issuance of patents to certain lands within the Siletz reservation in Oregon. The substance of the complaint is that between August, 1900, and February, 1901, Jones, intending to defraud the United States, caused certain named persons (honorably discharged soldiers of the Civil War) to make fraudulent homestead entries on land within the Siletz reservation in Oregon, and thereafter to make false and fraudulent final proofs required by law. By an act of August 15, 1894 (28 Stat. 286–326), provision was made for disposition of certain lands within the Siletz reservation. Three years' actual residence was required where the settler made entry under and in accordance with the provisions of the homestead laws of the United States. Thereafter, by an act of May 17, 1900, c. 479, 31 Stat. 179, Congress relieved the entryman from having to pay $1.50 per acre as a prerequisite to obtaining patents, as had been required by the act of August 15, 1894, just heretofore referred to.

It is alleged that, in order to carry out the fraudulent design to acquire title and to procure the entrymen to make false and fraudulent applications, and pursuant to an agreement entered into between Jones and each of the entrymen, Jones gave notice, as required by law, of the intention of the respective entryman to make homestead proofs upon the lands involved, and thereafter each entryman made formal proof at the land office; and in carrying out the plan each entryman, with witnesses, falsely swore that he had established residence upon the land, and resided thereon until the time of proof, and had made substantial improvements thereon, had only been temporarily absent, had cultivated portions of land, and had not conveyed any part thereof, and had made no contract of any kind whereby the title which he might acquire should inure in whole or in part to the benefit of any person except himself; that he was acting in good faith in perfecting the entry, when in truth and fact he had not lived on the land and had not made improvements and had not cultivated any part of it, as stated in his proof, and that if any portion was cultivated it was done by Jones, and that any improvements were made by Jones and not by any of the entrymen; that none of the entrymen acted in good faith, and that each was making the entry for speculative purposes and not for a home; that none ever lived upon the land, and that no improvements were made upon any of the lands during the life of the homestead entries; that Jones paid all the money to the United States officers for the entries, and furnished proof witnesses, paid their expenses, and that in ignorance the officers at the land office at Oregon City, Or., issued certificates to each of the entrymen entitling him to receive a patent upon presentation of the certificate to the Commissioner of the General Land Office; that shortly thereafter each entryman made a mortgage to Jones; that thereafter the United States officials in Washington, in ignorance of the fraudulent character of the proofs, issued patents to the respective entrymen; that all the fraudulent representations made by the entrymen and their witnesses were made with the knowledge and at the solicitation of Jones, and with intent to deceive and defraud the United States out of the title and possession of the lands described, and that the United States relied upon the fraudulent representations, and was deceived in the premises, and unlawfully and wrongfully was induced to issue patents and part with the title; that the lands were worth $133,000, and that by reason of the fraudulent representations of Jones, and relying upon them, patents were issued.

The defendant, by answer, put in issue the allegations of the complaint and made four affirmative defenses: He set up good faith; that the cause of action accrued more than six years next prior to the filing of the complaint; that no one of the entrymen in his final proof represented or testified that he had resided upon the land for a period of three years. The fourth affirmative defense avers that one entryman named Wells paid $240 to the government in commutation of his entry. There is, too, a defense to the effect that several tracts described in the complaint were, before the beginning of the action, sold to certain named purchasers for full value, and who bought in good faith without notice of the alleged frauds or deceits.

The District Court sustained a demurrer to the defendant's plea of the

statute of limitations, overruled the demurrers as to the other defenses, expressing no opinion upon the question of damages presented by the fourth defense. Replication was filed, and thereafter the District Court granted defendant's motion for judgment on the pleadings, and after judgment was entered accordingly, the United States sued out this writ of error.

Clarence L. Reames, U. S. Atty., and Barnett H. Goldstein, Asst. U. S. Atty., both of Portland, Or.

Fulton & Bowerman and Schwartz & Saunders, all of Portland, Or., for defendant in error.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). The entries described in the complaint were made under an act of Congress (28 St. 286, 326) and the amendments thereto (31 St. 179, 740) requiring, among other things, that three years' actual residence on the land "shall be established by such evidence as is now required in homestead proofs as a prerequisite to title or patent." But the land department of the United States, acting under what is now conceded to have been a mistake of law, permitted eight of the entrymen to make proof of residences of from one to one and one-half years, respectively, and to deduct times of their respective military services from the required three-year period of residence. This error arose by applying to the entries upon lands within the Siletz reservation the provisions of sections 2304 and 2305, Revised Statutes (Comp. St. 1916, §§ 4592, 4593), and the act of January 26, 1901, c. 180 (31 St. 740), which relate to commutation of homestead entries made by honorably discharged Union soldiers.

Inasmuch, then, as the requirements of the statute under which the proofs were taken and the patents issued could only have been properly met by proof of three years' actual residence on the land, the question arises: Is the United States precluded in this action from recovering damages although the entrymen in their final proofs did not say that they had actually resided on their lands for the required period of three years, yet did falsely swear that they had actually resided on the lands for certain times, though for less than the three years required; that they were making the entries for themselves when in fact they were making them for the benefit of the defendant, Jones; that they had made certain improvements which in fact they had not made; and that they had made their entries for the purpose of actual settlement and cultivation, when in fact they had not made them for those purposes.

By section 2290, Revised Statutes of the United States (Comp. St. 1916, § 4531), a person applying for an entry of a homestead shall make affidavit that his application is made for his exclusive use and benefit, and that his entry is made for the purpose of actual settlement and cultivation, and not, either directly or indirectly, for the use or benefit of any other person.

In Anderson v. Carkins, 135 U. S. 483, 10 Sup. Ct. 905, 34 L. Ed. 272, the Supreme Court said:

"The theory of the homestead law is that the homestead shall be for the exclusive benefit of the homesteader. Section 2290 of the Revised Statutes provides that a person applying for the entry of a homestead claim shall make affidavit that, among other things, 'such application is made for his exclusive use and benefit, and that his entry is made for the purpose of actual settlement and cultivation, and not, either directly or indirectly, for the use or benefit of any other person.' And section 2291, which prescribes the time and manner of final proof, requires that the applicant make 'affidavit that no part of such land has been alienated, except as provided in section twenty-two hundred and eighty-eight,' which section provides for alienation for 'church, cemetery, or school purposes, or for the right of way of railroads.' The law contemplates five years' continuous occupation by the homesteader, with no alienation except for the named purposes. It is true that the sections contain no express prohibition of alienation, and no forfeiture in case of alienation; yet under them the homestead right cannot be perfected, in case of alienation, * * * without perjury by the homesteader. Section 2304 makes provisions for homesteading by soldiers and officers who served in the army of the United States during the recent war; but that section makes no substantial change, except in respect to the time of occupation. Under this section Anderson perfected his homestead right; but the question of the length of occupation required to perfect such right in no manner affects the controversy. The same affidavits in respect to alienation are required from federal soldiers as in other cases of homesteads."

In Adams v. Church, 193 U. S. 510, 24 Sup. Ct. 512, 48 L. Ed. 769, the Supreme Court, referring to the oath required from the entryman that he has not alienated any interest in the land, except as provided in section 2288, R. S. 2291 (Comp. St. 1916, §§ 4535, 4532), said that the policy of the government in requiring such affidavit under the homestead law was to make it a condition precedent to granting a title.

In McCaskill Co. v. United States, 216 U. S. 504, 30 Sup. Ct. 386, 54 L. Ed. 590, the United States brought suit to cancel a patent to one Ward and a deed made by Ward and wife to McCaskill & Co. upon the ground that the proofs of settlement, cultivation, and improvement made by Ward were false, fraudulent, and untrue. The court, among other things, said:

"It may be well here to consider what the law requires. It gives the right of entry of 160 acres of land as a homestead, upon the condition, however, which must be established by affidavit, that the 'application is honestly and in good faith made for the purpose of actual settlement and cultivation and not for the benefit of any other person'; that applicant will honestly endeavor to comply with the requirements of settlement and cultivation, and does not apply to enter the same for the purpose of speculation. The purpose of the law, therefore, is to give a home, and to secure the gift the applicant must show that he has made the land a home. Five years of residence and cultivation for the term of five years he must show by two credible witnesses. Residence and cultivation of the land are the price that is exacted for its payment."

United States v. Minor, 114 U. S. 233, 5 Sup. Ct. 836, 29 L. Ed. 110, held that in every instance the settlement or residence for a given time upon the land, the actual cultivation of a part of it, and building a house on it, were required of the claimant, who must have intended to acquire real ownership for himself and not for another, nor for a purpose to sell to another. It is true that in that case all of the requirements of the law were set at naught, but the court said "that the one stupendous falsehood" included all the requirements on which the right to secure the land rested; that fraud and the misleading

effects on the officers of the government were shown, and that equity would give relief. The reasons given for the view expressed were that with the enormous domain of public land opened to homestead, preemption, and public and private sale, the government must rely upon officials who could not always visit the lands, and who are obliged to accept statements of parties asserting claims together with such ex parte affidavits as might be produced. Justice Miller used this language:

"The United States is passive. It opposes no resistance to the establishment of the claim, and makes no issue on the statement of the claimant. When, therefore, he succeeds by misrepresentation, by fraudulent practices, aided by perjury, there would seem to be more reason why the United States, as the owner of land of which it has been defrauded by these means, should have remedy against that fraud—all the remedy which the courts can give—than in the case of a private owner of a few acres of land on whom a like fraud has been practiced."

The court adverted to its steady holding that though, in the absence of fraud, the facts were concluded by the action of the land department, yet a misconstruction of the law, by which alone the successful party obtained a patent, might be corrected in equity much more when there was fraud or imposition.

In Wright-Blodgett Co. v. United States, 236 U. S. 397, 35 Sup. Ct. 339, 59 L. Ed. 637, the court restated the general rule that:

"Where a patent is obtained by false and fraudulent proofs submitted for the purpose of deceiving the officers of the government, and of thus obtaining public lands without compliance with the requirements of the law, while the patent is not void or subject to collateral attack, it may be directly assailed in a suit by the government against the parties claiming under it."

In United States v. Morehead, 243 U. S. 607, 37 Sup. Ct. 458, 61 L. Ed. 926, the court cited sections R. S. 2304, 2290, and the requirements thereof, that the applicant for a homestead must make actual entry, settlement, and improvement, and must make and file the affidavit, as provided in R. S. § 2290, that such application is honestly and in good faith made for the purpose of actual settlement and cultivation, and not for the benefit of any other person, and said that in addition to this requirement, "in order to obtain a certificate or patent, he must, under R. S. 2291, make proof of his residence for the full period, and an affidavit 'that no part of such land has been alienated.'"

[1] We might cite many other cases, but those referred to clearly state the principle which controls in construing the homestead law; that the entryman must in good faith claim the land for his own benefit, and can make no agreement for alienation, and must reside upon the land continuously for the time that the law requires residence thereon, and must make it his home.

[2] Now the complaint herein alleges fraud and deceit by defendant in that he procured the entrymen named to make false and fraudulent representations in their applications and final proofs respecting alienation, residence, cultivation, and improvements; that these representations were relied upon by the United States, and that in reliance upon them patents were issued. Plainly, if the entrymen did make false

and fraudulent representations and affidavits with respect to these matters or any of them, and if the authorities relied upon the proofs with respect to them, they deceived the United States, and through their deception procured patents. It is said, however, that inasmuch as the representations as to residence did not bring the entrymen within the statute, no ground was furnished upon which deceit could be predicated, because, if the alleged representations had been true, the entrymen did not make the showing necessary to the issuance of patents. This contention would eliminate intentional misrepresentation and falsehood as to agreements of alienate and as to continuous residence for the time sworn to in the final proof and as to cultivation of the lands embraced within the entries and occupancy thereof for home purposes. But these several requirements cannot be looked upon as immaterial and irrelevant, because they are of the essence of the homestead law.

And if there was perjury committed by the entrymen in respect to them, and if the United States relied upon the statements made concerning them in final proof, and was deceived, and issued patents for the lands, the government is not estopped from asserting that it was defrauded. Furthermore, even though the period of residence falsely sworn to was less than that demanded by the law, if defendant knowingly and corruptly entered into a collusive arrangement with the entrymen for the purpose of aiding in such misrepresentation and deceit, with intent to acquire title and possession of the lands for himself, and did directly aid in inducing the United States to part with title to lands with the purpose of acquiring them for himself, we believe he is liable in this action for the value of the land.

In Gilson v. United States, 185 Fed. 484, 107 C. C. A. 584, in a suit to cancel patent on the ground that the entryman had not entered the land under the homestead law in good faith, in that he had not made the entry for himself, but had acted as an instrument of one Gilson, to acquire title for Gilson's benefit, this court affirmed a decree canceling the patent upon the ground that the evidence showed that Gilson had induced one Landis to make the entry for him, had paid the money for commutation, had taken a mortgage therefor, and had received a deed as soon as patent was issued, and that the defendant had known that the proof of improvement and cultivation was false. On appeal the Supreme Court affirmed these views. Gilson v. United States, 234 U. S. 380, 34 Sup. Ct. 778, 58 L. Ed. 1361. In affirming United States v. Southern Pacific R. Co. (C. C.) 117 Fed. 545, this court said in Southern Pacific R. Co. v. United States, 133 Fed. 651, 66 C. C. A. 581:

"The railroad company had received patents for lands under an erroneous interpretation of the law. It was a clear mistake, and conveyed no rights or title whatever to the railroad company to any of the lands in question. The company sold a portion of the lands to bona fide purchasers, in many cases receiving more than the government price therefor. Not having any title to the lands, and having received the money for the lands it sold to bona fide purchasers, it must be held responsible to pay the amount specified in the act therefor."

To like effect is United States v. Oregon & C. R. Co. (C. C.) 133 Fed. 954, where Judge Bellinger in the District Court for Oregon held

that the United States could maintain action to cancel patents for lands where the patents were erroneously issued under a railroad grant, and could recover from the grantee the price paid for the lands so patented which were sold to bona fide purchasers. This ruling was affirmed in Oregon & C. R. Co. v. United States, 144 Fed. 832, 75 C. C. A. 486. In Williams v. United States, 138 U. S. 514, 11 Sup. Ct. 457, 34 L. Ed. 1026, the Supreme Court considered a bill where the allegations set out fraud and wrong, and showed inadvertence and mistake in the certification to the state of Nevada with respect to the title to certain lands. It was held that inadvertence and mistake are, equally with fraud and wrong, grounds for judicial interference to divest a title acquired thereby, the court saying that this was equally true in transactions between individuals as in those between the government and its patentee. Justice Brewer, for the court, said:

"If through inadvertence and mistake, a wrong description is placed in a deed by an individual, and property not intended to be conveyed is conveyed, can there be any doubt of the jurisdiction of a court of equity to interfere and restore to the party the title which he never intended to convey? So of any other inadvertence and mistake, vital in its nature, by which a title is conveyed when it ought not to have been conveyed. The facts and proceedings attending this transfer of title are fully disclosed in the bill. They point to fraud and wrong, and equally to inadvertence and mistake; and, if the latter be shown, the bill is sustainable, although the former charge against the defendant may not have been fully established."

In Southern Pacific Railroad Co. v. United States, 200 U. S. 341, 26 Sup. Ct. 296, 50 L. Ed. 507, the court affirming this court in Southern Pacific R. Co. v. United States, supra, held that where a tract of land has been conveyed by mistake, and the vendee prior to the discovery of a mistake conveys to a bona fide purchaser, the original owner is not limited to a suit to cancel the conveyances and re-establish his own title, but may elect to confirm the title of the innocent purchaser, and recover of his own vendee the value of the land up to at least the sum received by him.

From these authorities the rule is not to be doubted that equity will afford relief by sustaining bills charging mistake on the part of the land officials of the United States in issuing patents, and fraud on the part of the entrymen of public lands to whom patents have been issued under circumstances such as are alleged in the present case. We fail to perceive why the government may not elect to ratify the patents and to sue at law for the value of the lands. Safford v. Grout, 120 Mass. 20; 12 R. C. L. p. 297; Bigelow on Fraud, vol. 1, p. 544; United States v. Pitan (D. C.) 224 Fed. 604; United States v. Koleno, 226 Fed. 180, 141 C. C. A. 178; Bistline v. United States, 229 Fed. 546, 144 C. C. A. 6.

Our conclusion is therefore that whether the alleged fraud and deceit and misrepresentation was practiced, and whether they were the inducing causes for the issuance of the patent, and whether the United States relied upon the representation and was deceived, and whether defendant intentionally did the wrongs charged against him, involved issues of fact to be decided upon a consideration of the evidence as well as the law.

[3] It is contended by the defendant that under section 8 of the act of March 3, 1891, c. 561, the action is barred. That section reads as follows:

*"That suits by the United States to vacate and annul any patent heretofore issued shall only be brought within five years from the passage of this act, and suits to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents."

The patents involved in this action were issued in 1902, but the action was not instituted until 1912. It is said that because there is no contention that the government failed to discover the alleged fraud within six years next preceding the commencement of the action, the right to institute a suit to avoid or annul the patents is barred, and the government is without remedy in any form of action for the alleged fraud. We agree with the District Court in holding that the government is not bound by any statute of limitations unless Congress has clearly manifested its intention that it shall be so bound, and that the government may sue to recover the value of land procured from it through mistake or through fraud, waiving any right of action it may have had for annulment of the patent. United States v. Chandler Dunbar Co., 209 U. S. 447, 28 Sup. Ct. 579, 52 L. Ed. 881; State of Louisiana v. Garfield, 211 U. S. 70, 29 Sup. Ct. 31, 53 L. Ed. 92; United States v. Pitan (D. C.) 224 Fed. 604; Bistline v. U. S., 229 Fed. 546, 144 C. C. A. 6; United States v. Koleno, 226 Fed. 180, 141 C. C. A. 178.

[4] In addition to the entries made by the entrymen particularly included in what has been said, the record shows an entry made by one Wells. Wells made application October 1, 1900, and commuted May 20, 1902, by a payment of the original price of $1.50 per acre (Act of January 26, 1901). Under the provisions of section 2301, R. S. U. S., as amended act of March 3, 1891, Wells was entitled to commute his entry upon making proof of "settlement and of residence and cultivation" for a period of 14 months. It is to be noted that the statute did not use the word "actual" residence. But the act of August 15, 1894, did require "actual" residence, and, inasmuch as the proofs submitted by Wells concerning his residence showed actual presence upon the land for not more than 10 weeks, the contention is made that, as a matter of law, the patent should not have been issued to Wells, and that the government had no right to rely upon the representations as to residence, and therefore that no action for fraud and deceit can be maintained with respect to the entry. Section 2301, as amended March 3, 1891, reads as follows:

"Sec. 2301. Nothing in this chapter shall be so construed as to prevent any person who shall hereafter avail himself of the benefits of section twenty-two hundred and eighty-nine from paying the minimum price for the quantity of land so entered at any time after the expiration of fourteen calendar months from the date of such entry, and obtaining a patent therefor, upon making proof of settlement and of residence and cultivation for such period of fourteen months."

We think that a commuted entry such as Wells made is brought within the purview of this section, and is not controlled by the act of 1894, heretofore referred to (28 St. 286–326). Therefore proof of

settlement and residence and cultivation for the period of 14 months was required; although, as applied to the Wells entry, the requirements as to the character of residence are not as strict as those which should govern the cases heretofore considered, where the statute called for actual residence. Nevertheless there was an issue as to whether or not Wells was a bona fide entryman, and whether he made the land his home to the exclusion of any other home, and whether the government relied upon his representations in respect to these matters and in reliance upon them issued patent, and whether or not the defendant aided Wells in making the alleged false statements charged to have been made by him in his proofs, all as alleged in the complaint.

The District Court having expressed no opinion upon what should be the standard of value which may be recovered by the government in the event of any recovery, we express no opinion upon the point.

The judgment is reversed and the cause remanded, with direction to overrule the motion for judgment on the pleadings.